**In the Matter of the REINSTATEMENT OF Harvey Russell WRIGHT, Jr. to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 3876.**

Supreme Court of Oklahoma.

Nov. 21, 1995.

Hershel L. Franklin, Norman, Michael A. Taylor, R.P. "Bob" Moore, Taylor, Moore & Plater, Oklahoma City, for Harvey Russell Wright, Jr.

Dan Murdock, General Counsel, Mike Speegle, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, for Oklahoma Bar Association.

LAVENDER, Justice.

In February 1988, an order of interim suspension from the practice of law in the State of Oklahoma was issued against Harvey Russell Wright, Jr. (Wright) pursuant to 5 O.S.1981, Ch. 1, App. 1–A, Rule 7.1 et seq. of the Rules Governing Disciplinary Proceedings after his plea of guilty in the United States District Court for the Western District of Oklahoma to the felony crime of distributing cocaine. In May 1990, this Court entered final discipline against Wright in the form of a two year and one day

suspension. *State ex rel. Oklahoma Bar Association v. Wright,* 792 P.2d 1171, 1172 (Okla.1990). This period ended in May 1992. Wright filed a petition for reinstatement in December 1992. After hearing in March 1993, a Professional Responsibility Tribunal (PRT) recommended Wright be reinstated to the practice of law. We agree with the recommendation of the PRT and grant the petition.

## STANDARD OF REVIEW, BURDEN OF PROOF AND FACTORS TO BE CONSIDERED IN REINSTATEMENT PROCEEDINGS

■ In reinstatement proceedings we do not sit in review of the PRT's recommendations, but in exercise of our exclusive original jurisdiction in matters involving the licensing of attorneys. *Matter of Reinstatement of Kamins,* 752 P.2d 1125, 1129 (Okla.1988). Recommendations of the PRT are merely advisory and the ultimate decision regarding reinstatement rests with this Court. *Id.* at 1129. Our review is, thus, *de novo.* The burden of proof in reinstatement proceedings is on the petitioner and it is a heavy one. It is stated in Rule 11.4 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A as follows:

> An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be suffi-

cient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy towards the applicant must be ,disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.[1]

■ Rule 11.5 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, further requires before reinstatement it must be found the applicant possesses the good moral character entitling him to be admitted to the Oklahoma Bar Association, that he has not engaged in the unauthorized practice of law during any suspension and that he possesses the competency and learning in the law necessary for admission. *State ex rel. Oklahoma Bar Association v. Samara,* 683 P.2d 979, 981 (Okla.1984). This Court has further looked at eight factors it has deemed relevant in reinstatement proceedings. They are 1) present moral fitness; 2) demonstrated consciousness of wrongful conduct and disrepute conduct has brought on the profession; 3) extent of rehabilitation; 4) seriousness of original conduct; 5) conduct subsequent to discipline; 6) time elapsed since original suspension; 7) character, maturity and experience at time of discipline; and 8) present competence in legal skills. *Matter of Clifton,* 787 P.2d 862, 863 (Okla. 1990). We have also recognized that the more severe the offense the heavier the burden an applicant must overcome to gain reinstatement, but that each application must be considered on its own merits and will fail or succeed on the evidence presented and the particular circumstances of each individual case. *Matter of Reinstatement of Cantrell,* 785 P.2d 312, 314 (Okla.1989).

---

1. Rule 9.1 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, as it did at the time Wright was suspended, generally requires today, a disbarred or suspended attorney or one who has resigned pending a disciplinary proceeding notify all clients of his inability to represent them further and to withdraw as counsel in all cases in any tribunal within twenty (20) days after the disbarment or suspension has become final and to file an affidavit that such has been done. The General Counsel of the Oklahoma Bar Association stipulates Wright substantially complied with Rule 9.1 and we so find.

■ Further, reinstatement is not automatic on a *prima facie* showing an applicant's conduct has been proper during a period of disbarment, even if there is no evidence to the contrary. *Matter of Reinstatement of Cook,* 772 P.2d 918, 919 (Okla.1989). We also note before reinstatement there must be a finding the applicant will not commit any serious crime if readmitted and that we must always keep in mind that our foremost consideration is to protect the public welfare. *Matter of Reinstatement of Cantrell, supra,* 785 P.2d at 313. We also must determine that reinstatement will not adversely affect the Bar. *Id.*

The Oklahoma Bar Association, through the General Counsel, initially opposed reinstatement in this case and took the position that an attorney with a felony conviction should never be allowed reinstatement by this Court. However, in his latest submission to this Court the General Counsel has receded from this earlier position and has informed us that given our prior cases he cannot present argument against reinstatement and that he realizes that each decision on reinstatement must be made on a case-by-case basis. We believe the General Counsel was correct to recede from his earlier position given the rules specified above concerning reinstatement and our previous cases in this area.

■ In support of his initial position the General Counsel brought to our attention no rule which would prohibit reinstatement in all instances to one convicted of a felony. No rule was brought to our attention because there is no such rule. Rather, as stated above each application must be viewed on a case-by-case basis to determine whether reinstatement should be allowed. For example, in *Matter of Reinstatement of Page,* 866 P.2d 1207 (Okla.1993), we denied reinstatement because of the seriousness of the crimes committed and the disrepute cast on the profession by the crimes. *See also Matter of Reinstatement of Smith,* 871 P.2d 426 (Okla.1994); *Matter of Reinstatement of*

*Hanlon,* 865 P.2d 1228 (Okla.1993). However, in *Matter of Reinstatement of Cook, supra,* we granted reinstatement to an applicant convicted of a felony who showed by clear and convincing evidence that he had been rehabilitated and was of high moral character. *See also Matter of Reinstatement of Crabtree,* 793 P.2d 296 (Okla.1990); *Matter of Reinstatement of Cantrell, supra.* These latter cases illustrate that our rules provide that those persons who comply with the high standards required for reinstatement should be and are sometimes permitted to resume the practice of law, notwithstanding conviction of a felony. Thus, the decision in a reinstatement proceeding should be made only after a thorough review of the crime(s) committed and their effect on the legal profession [*Matter of Reinstatement of Smith, supra,* 871 P.2d at 428] and consideration of all of the other factors set forth above. Keeping all of these considerations and factors in mind we now turn to a review of the evidence presented to the PRT.

### EVIDENCE CONCERNING REINSTATEMENT DETERMINATION [2]

■ Wright was admitted to practice law in Oklahoma in 1981. Initially, he was an assistant district attorney in Elk City, Oklahoma in the child support collection division. After a brief time there he entered private practice and shortly began an approximate 15 month partnership with another attorney. He then worked as a sole practitioner from about March 1983, until he was elected district attorney of the Second District Attorney District which includes six counties in western Oklahoma; Ellis, Roger Mills, Custer, Beckham, Greer and Harmon. After his election, and before he was sworn into office as district attorney in January 1987, he was appointed an assistant district attorney in the district to enhance the possibility of a smooth transition. On June 10, 1987, Wright resigned as district attorney, a resignation brought about by his plea of guilty to the criminal charge for which he was suspended by this Court.

---

**2.** In addition to certain documentary evidence two transcripts of hearings are before us for review; the initial disciplinary hearing held on August 7, 1989 before a PRT which culminated in Wright's suspension by this Court and the reinstatement hearing of March 18, 1993 before a PRT.

The evidence showed the facts and circumstances surrounding the conviction for distribution of cocaine to which he pled guilty involved Wright and two other attorneys pooling their money to buy a relatively small amount (one gram) of the substance for their personal use. It was Wright who obtained the substance and shared it with the other two attorneys. This incident occurred in late 1985 or early 1986, i.e. before Wright was elected district attorney. The evidence also showed, and Wright admitted, he used cocaine once in 1985 and once in 1986, apparently that he had used it on previous occasions, and that he had been a user of marijuana, having begun experimentation with that drug at the age of fifteen. No evidence was presented by the Bar or any other source, however, that Wright was ever a trafficker in illegal drugs or dealer of any drug for profit and the uncontradicted evidence established Wright stopped using any illicit drugs prior to the time he took office as a district attorney or was appointed as an assistant after his election to that post. Further, there is no evidence in this record that Wright's previous use of illegal substances ever affected his representation of a client when he was in private practice.

In addition, the evidence showed that Wright underwent drug testing in April 1987 (the date of his arraignment on the federal charge) until August 1992 and that no such tests showed positive for any illicit drug. Wright also testified he voluntarily underwent drug testing in January 1987 when he became district attorney. As we view the record, Wright underwent regular drug testing for about a 68 month period from January 1987 until August 1992, with no positive results for any illicit substance.

After Wright's conviction he was sentenced to two years imprisonment, with a special three year parole term after his release. He actually served one year in prison from September 1987 to September 1988. Since his release from prison Wright has worked for three different attorneys (one in Norman, one in Oklahoma City and one in Enid) performing clerical functions and doing legal research tasks. He has also done piece-meal legal research for other attorneys during this time period. The evidence showed he acted only as a law clerk for these attorneys and the evidence, both from Wright's testimony and that of the attorneys he worked for, was that he never held himself out to anyone that he was authorized to practice law. In fact, evidence was presented which showed Wright or the attorneys who he worked for would explain to any clients Wright came in contact with that he could not practice law. On occasion Wright would also inform clients of these attorneys of why he could not practice law, i.e. he was under suspension because of a criminal drug conviction. A client of one of the attorneys for which Wright clerked testified that at their first meeting Wright explained that he had been suspended for a felony conviction and could not give legal advice. Wright's work for these various attorneys, then, consisted only of legal research and writing, and trial preparation and organization under the direction of the attorneys.

Six witnesses testified in person on Wright's behalf. Three of the witnesses were the attorneys Wright worked for after his release from prison. All testified to the highly competent work Wright did for them as a law clerk. They also attested to his present moral fitness, ethical conduct and honesty. These three attorneys, who had a close working relationship with Wright after his release from prison and some social contact, all testified to the shame and remorse Wright has felt not only toward himself, but for the disrepute his conduct and conviction brought upon the legal profession. They were also of the opinion Wright had ended his use of illegal drugs and that he had completely rehabilitated himself as to the use of illicit drugs.

Another witness was the United States Probation Officer that supervised Wright from the time of his arraignment in federal court (the spring of 1987) to his incarceration in September 1987 and again after his release from prison in September 1988 until his release from parole supervision in August 1992. This witness testified Wright underwent, at least, monthly drug tests during his supervision with no positive results for illicit drugs. Although the probation officer had

recommended that regular or routine drug testing halt after a year from Wright's release from prison, to be replaced by occasional random testing, Wright asked that the regular testing (apparently every two weeks) continue. The probation officer also testified, in his opinion, Wright did not use illegal drugs during his supervision. He was further of the opinion Wright was always honest in dealing with him and that Wright would never use illegal drugs again. He based this latter opinion on both his actual experience with Wright and his experience as a probation officer with other drug offenders. His view was Wright had rehabilitated himself as to the drug problem(s) which led to his conviction, and was remorseful about his conduct and how it affected other people.

Also testifying on behalf of Wright was a retired lieutenant with the Oklahoma City Police Department, who at the time of the reinstatement hearing was a private investigator based in Norman. This individual first became associated with Wright in 1986 after Wright's election as district attorney. He was hired by the district attorney who Wright was to succeed to assist Wright in three homicide cases Wright was going to have to try shortly after he took office as district attorney in January 1987. This witness worked closely with Wright during this period of time and was of the opinion Wright was not using illegal drugs during the time of this initial association. The witness also came in contact with Wright again after his release from prison and provided Wright with office space while Wright was working on his own post-conviction relief matter in the federal system. He also worked with Wright while both were doing work for various attorneys, Wright as a law clerk and the witness as an investigator. The witness indicated he became friends with Wright and looked after Wright's apartment when Wright would be out of town. He was of the opinion, like the other witnesses, Wright had rehabilitated himself and he never saw any evidence of illegal drug use by Wright during their relationship, which was ongoing since Wright's release from prison. This individual had a high opinion of Wright's legal competence. Further, the investigator stated he considered himself a "hardliner" with regard

to drugs, but that he was confident that Wright had learned from his mistakes and was no longer using illegal drugs.

The final witness in support of Wright was a doctor of osteopathy who was a client of one of the attorneys Wright was employed by after his release from prison. The doctor came in close contact with Wright as a client of this attorney and gave opinions Wright was not then abusing illegal drugs, that Wright was rehabilitated and that he could detect no psychological, medical or physical problems that would cause him to question Wright's rehabilitation. The doctor was also impressed with Wright's work ethic and his research and writing ability that he was able to observe through Wright's work as a law clerk.

In addition to the legal research and writing in his work as a law clerk, the evidence showed Wright took some continuing legal education (CLE) courses after his release from prison and that he regularly reviewed U.S. Law Week and the Criminal Law Reporter. The above recitation is generally the pertinent evidence before this Court concerning Wright's petition for reinstatement.

## DECISION

As noted earlier, the General Counsel's latest submission to this Court, although not recommending reinstatement, informs us that no argument is being made against Wright's reinstatement. With this recognition we move to a determination of whether Wright has met his heavy burden to show he is entitled to be reinstated to practice law in the State of Oklahoma.

The PRT found and we agree Wright has retained competence in the law through his legal research and writing activities and other legal work for various attorneys since his release from prison, from the CLE seminars he has attended and his review of legal periodicals. The evidence is also clear and convincing he has not engaged in the unauthorized practice of law since his suspension and we so find.

The crime for which Wright was convicted is a serious one. It not only caused him to

serve time in prison, but it disgraced him and brought disrepute on the legal profession. From our review of the record it is clear Wright realizes the wrongfulness and seriousness of the misconduct culminating in his conviction and the disrepute his conduct brought on, not only himself, but on the entire legal profession. The evidence also clearly shows Wright has rehabilitated himself and that he possesses the present moral fitness to be reinstated. If anyone has shown entitlement to reinstatement after a conviction for drug involvement it is Wright.

From the time of his interim suspension in February of 1988, Wright has been prohibited from practicing law for a period of over seven and one-half years, a period well over three times longer than the two year and one day suspension we imposed as final discipline in *State ex rel. Oklahoma Bar Association v. Wright, supra.* It has also been over five and one-half years since this final discipline was imposed in May 1990. The record shows Wright has conducted himself in an exemplary fashion during this period, both in his work for the various attorneys outlined above and in his personal life. He has learned from the serious mistake he made and we can find no evidence in this record Wright will ever again involve himself in illicit drugs. There is further no evidence in this record that would lead to a conclusion Wright will ever again pose any danger to the public should he be reinstated or that he will again bring disrepute upon himself or the legal profession by engaging in serious misconduct.

Further, although Wright's previous involvement with illicit drugs is serious and his conviction was for distribution of cocaine, we cannot ignore the facts shown by this record that the circumstances surrounding the situation were that Wright shared the substance with two other attorneys who had pooled their money to purchase a relatively small amount of the drug for their personal use. No evidence in this record contradicts these circumstances and, as stated earlier, there is simply no evidence that Wright was a trafficker in such substances or a dealer of illegal drugs for profit. At most the evidence shows he was a user and/or abuser of cocaine and marijuana, and that such use and abuse ended approximately nine years ago. On such a record reinstatement is appropriate.[3]

Thus, as can be seen by the above discussion, when one thoroughly and critically analyzes the circumstances surrounding Wright's conviction, and considers the overwhelming evidence of rehabilitation, the conclusion emerges that Wright has shown entitlement to reinstatement. The evidence shows that Wright has learned from his mistake(s) and he is a prime candidate for reinstatement.

Accordingly, on review of the record in this case we find the evidence to clearly and convincingly establish that Harvey Russell Wright, Jr. will in the future conform to the high standards required of a member of the Bar. The application for reinstatement of

---

**3.** We are also of the view that reinstatement here is consistent with our treatment in two recent bar disciplinary cases concerning attorneys involved with illicit drugs. In *State ex rel. Oklahoma Bar Association v. Willis*, 863 P.2d 1211 (Okla.1993), an attorney convicted of obtaining controlled substances by misrepresentation was suspended for a fifteen month period. Under Rule 11.8 of the Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, a suspension for two years or less means the disciplined attorney may resume practice upon the expiration of the suspension period by the filing of an affidavit with the Clerk of the Supreme Court attesting that he/she has not engaged in the unauthorized practice of law during the suspension and certain other matters, without an order of reinstatement from this Court. Although *Willis*, of course, is not identical to the instant case and there were mitigating factors involved (the lawyer had become addicted to pain-killers after treatment for perirectal abscess), in one sense it can be looked at as even more egregious than the instant matter because it involved fraudulent activity on the part of the attorney who would feign illness to obtain pain-killer prescriptions and the conduct of defrauding pharmacists occurred over a five year period, involving apparently one hundred prescriptions a year. Further, in *State ex rel. Oklahoma Bar Association v. Arnett*, 815 P.2d 170 (Okla.1991), an attorney who plead guilty to possession of a small amount of cocaine was suspended by this Court for a period of ninety days. The evidence in *Arnett* showed the attorney had a long history of cocaine and alcohol abuse. *See also State ex rel. Oklahoma Bar Association v. Thompson*, 781 P.2d 824 (Okla.1989) (former state district attorney convicted of marijuana possession suspended for ninety days).

Harvey Russell Wright, Jr. is therefore **GRANTED** and he is **REINSTATED TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS.** This reinstatement, however, is subject to the payment of costs of this proceeding in the amount of $1,255.00 which shall be paid within thirty (30) days from the date this Opinion becomes final.

WILSON, C.J., and HARGRAVE, OPALA and SUMMERS, JJ., concur.

KAUGER, V.C.J., and HODGES, SIMMS and WATT, JJ., dissent.