In the Matter of the REINSTATEMENT OF Kenneth F. BROWN to Active Membership in the Oklahoma Bar Association and to the Roll of Attorneys.

SCBD No. 4102.

Supreme Court of Oklahoma.

Sept. 17, 1996.

---

J.W. Coyle, III, Oklahoma City, for Petitioner.

Allen J. Welch, Oklahoma Bar Association, Oklahoma City, for Respondent.

HODGES, Justice.

## I. PROCEDURAL HISTORY

On July 25, 1989, Kenneth F. Brown (Brown or Petitioner) submitted his resignation pending disciplinary proceeds from the Oklahoma Bar Association (Bar or Respondent). On February 6, 1990, this Court accepted Brown's resignation. Brown now seeks to be reinstated to the Bar and to have his name placed on the roll of attorneys.

## II. FACTS

At the time of his resignation, there were nine allegations of violations of the Code of Professional Responsibility (CPR) and the Rules Governing Disciplinary Proceedings (RGDP) pending against Brown. The Professional Responsibility Commission (PRC) had recommended a formal complaint be filed on these grievances. Brown acknowledged the following allegations, if proven, would warrant discipline. The allegations are as follows:

1) Brown was retained in October 1984. The lawsuit was dismissed twice, once on October 29, 1987, because of Brown's failure to prosecute. Brown failed to respond to the Bar's request for information. At his deposition pursuant to a subpoena, he presented a letter claiming it was a timely response. The letter had been fabricated.

2) After Brown was terminated by a client, he failed to turn over the file for four and one-half months. He also loaned the same client $800 as an advance on a settlement.

3) Brown failed to return 49 telephone calls to a client and neglected discovery requests on a lawsuit involving the same client for ten months. The client discharged Brown employment on May 2, 1988, but Brown did not withdraw from the case until June 21, 1988. Brown misrepresented to the Bar that he had complied with the discovery requests.

4) From July 1986 through June 1988, Brown neglected to act on a worker's compensation in which he had been hired to represent the claimant. After his employment was terminated, he failed to turn over the file.

5) Brown withheld funds from a client for the purpose of paying the client's medical bills. Brown commingled the funds and failed to pay the medical bills until a grievance was filed.

6) Brown failed to comply with an order to deposit funds from a lawsuit into a trust fund for a minor. Brown also withheld money from the funds to pay the client's medical bills and failed to pay the bills. Brown failed to respond to a judge's summons to account for the minor's funds.

7) Brown withheld funds from a personal injury settlement for the purpose of paying the client's medical bills. Brown commingled the funds and did not pay the medical bills until a grievance was filed.

8) Brown was hired to settle a contract dispute. He failed to contact the opposing counsel for two to three months after which a lawsuit was filed. Brown's client instructed him to file a counter suit which he failed to do. Brown did not file answer to the suit and a default judgment was entered against his client. Even after asking for a continuance, Brown failed to appear at the hearing on the assets.

9) Brown forged a client's signature on a settlement check, commingled the funds, did not pay the money withheld for medical bills, and used the money for his personal benefit.

There were also ten pending complaints which the PRC had yet to investigate. Those include the following:

1) Brown was retained to prosecute two claims and to pursue an uninsured motorist claim. In spite of his representa-

tions to the contrary, Brown neglected these matters. Brown also represented the same client in a personal injury matter which was settled. Brown withheld funds to pay the medical claims, failed to timely pay one medical provider, and totally failed to pay another provider.

2) Brown undertook to represent a client in a wrongful termination suit, failed to file the petition, handwrote a case number on a petition, and misrepresented to the client that the suit had been filed.

3) Brown withheld funds from approximately 50 clients for the payment of medical bills but failed to make the payments. The complaint was filed on information from three doctors and a collection agency.

4) Brown made misrepresentation to a client about the status of her worker's compensation case, the court dates, and settlement offers. He also neglected to appear at the hearing.

5) A client could not locate Brown to secure his endorsement on a settlement check on which Brown was a payee.

6) A client could not locate Brown to discuss to pending cases and to obtain documents she needed from her file.

7) Brown forged a client's signature on a settlement check and deposited the funds into his trust account. For two and one-half months, Brown's employees told the client that the check had not been received. After the client was given a check, it was held for several days before payment because of insufficient funds.

8) Brown withheld $3,000 from a settlement to pay medical providers. Brown paid three of the providers $1,115 and failed to pay the remaining three providers.

9) Brown neglected to file a medical malpractice and wrongful death claim on behalf of a client. Subsequently, the case was dismissed because the statute of limitations had run.

10) Brown failed to communicate with the parent of a client who was a minor and failed to intervene in collection attempts by medical providers even contrary to the representations of Brown's staff.

Following Brown's filing for reinstatement, the PRT held a hearing. The Bar and Brown filed a joint stipulation as to the following facts. Brown was admitted to the of practice law in 1977. On August 7, 1990, Brown entered pleas of guilty to the charge of forgery and to two counts of embezzlement by a trustee. Brown was sentenced to five years suspended sentences for each charge. Brown has fulfilled his obligations under the sentences which expired on August 7, 1995. Brown has also made restitution in compliance with the sentence of $30,500.87.

The parties further stipulated that Brown has been working in a law office for the last two years, has attended continuing legal education courses, and has regularly reviewed the Oklahoma Bar Journal. Brown has studied and kept himself informed sufficiently to maintain his competency. No funds of the Client's Security Fund of the Oklahoma Bar Association were expended on his behalf. Lastly, the parties stipulated that Brown has not engaged in the unauthorized practice of law since his resignation.

In addition to the stipulation, the parties presented several witness. Brown called his brother-in-law, James Birdsong. James Birdsong said he knew of Brown's problems although not about the problems with client's money. Birdsong had seen Brown through the problems and recommended reinstatement.

Dr. Gary K. Borrell, Brown's treating psychiatrist, testified of the improvement that Brown had made. He stated that Brown was on medication and was receiving counseling. He diagnosed Brown's emotional problems as an anxiety disorder and a phobia of the practice of law. He recommended that Brown be reinstated. He thought Brown was sufficiently recovered to practice law so long as he remained on medication and continued counseling for several months to one year. Dr. Borrell testified that he thought stress caused the problems which he believed began in 1987. His opinion was that the probability of reoccurrence was about five percent. Dr.

Borrell stated that Brown would probably revert to his ill condition if he abruptly stopped his medication.

Connie Cardoni, Kevin Morris, Eileen Echols, and David Echols, all friends of Brown testified on his behalf, and Thomas R. Cook, Brown's employer, submitted an affidavit in lieu of his personal appearance. All thought highly of Brown and thought he could resume the practice of law, in part because of his desire to do so. Nancy Brown, Brown's wife, likewise, testified that she thought he was ready to once again practice law.

Kenneth Brown testified in his own behalf. He testified that he thought he was sufficiently recovered to practice law. However, he stated: "I knew that I didn't intentionally do anything wrong." He attributes all his problems to his emotional state and could not explain the incidents which occurred before the time when he believes his problems began.

Brown further testified: "I can't sit here and tell you where some of this money went, to be perfectly honest with you. But I can tell you this: None of it went to pay Ken." Two of the claims against Brown relating to his professional misconduct were discharged in the bankruptcy. Brown testified that when he filed for bankruptcy he had a liability of $726,000. He testified that before his break down he had a very high standard of living. Since his illness, he has worked in two law offices as a law clerk.

Brown did not know whether or not he had complied with rule 9.1 of the Rules Governing Disciplinary Proceedings. He could not remember if he mailed notices of his inability to represent them and their need to retain new counsel by certified mail. He thought the notice was sent by first class delivery and if returned, then sent by certified mail. He also testified that he did not comply with the requirement that he file an affidavit with the Clerk of this Court stating that he had complied with the other provisions of rule 9.1.

Ron Chambers, an investigator for the district attorney's office, testified on behalf of the Bar. In 1989, the district attorney's office began getting complaints about Brown misappropriating clients' funds. Out of 300 clients' Chamber interviewed, 43 had possible claims of criminal activity. Of the 43, he found 29 charges of forgery or embezzlement which could be proven. The 29 charges would result in about 100 counts. Chambers supervisor instructed him to file charges involving 5 of Brown's clients resulting in 15 counts.

Mr. Chambers further testified that as a result of a plea bargain, Brown pled guilty to two charges, one for embezzlement and the other for forgery. Brown also stipulated to $30,500.87 damages to the 29 clients.

Leota Caldwell, a client who had a grievance pending against Brown at the time of his resignation, testified that on June 15, 1985, she signed a contract with Brown to procure his representation of her in a medical malpractice and wrongful death action. Fourteen months later, Ms. Caldwell retain another attorney because Brown had failed to return her calls, 15 to 20 of them. Her case was dismissed because the statute of limitations had run on her claim by the time she had retained the other lawyer.

## III. PROFESSIONAL RESPONSIBILITY TRIBUNAL'S REPORT

After considering all the evidentiary material and the testimony of the witnesses, the PRT recommended that Brown be denied reinstatement. The PRT found that Brown possesses good moral character, has not engaged in the unauthorized practice of law, and possesses the requisite learning to practice law. Further, the PRT commended Brown for his efforts. However, the PRT stated: "the serious nature of misconduct and the exceptional number of such occurrences which admittedly resulted in disrepute upon the legal profession, weighs heavily toward declining readmission." The PRT also found "it practically inconceivable that conduct of [Brown] extending generally over a two-year period could result in this number of grievances and alleged breach of such numerous professional and public responsibilities." "[I]n view of the scope and circumstances of [Brown's] transgressions", the

PRT found it difficult to believe that Brown had never intended personal gain.

## IV. DISCUSSION

■ This Court exercises its original and exclusive jurisdiction in bar reinstatement proceedings. *In re Reinstatement of Wright,* 907 P.2d 1060, 1062 (Okla.1995); *In re Reinstatement of Kamins,* 752 P.2d 1125, 1129 (Okla.1988). Although the PRT's recommendations are accorded great weigh, they are merely advisory. *Kamins,* 752 P.2d at 1129. This Court, thus, reviews the record *de novo. Wright,* 907 P.2d at 1062.

■ The applicant seeking reinstatement bears a heavy burden. *Id.* Rule 11.4 of the Rules Governing Disciplinary Proceedings sets out the standard:

An applicant for reinstatement must establish affirmatively that, if readmitted ... the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. The applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time.... If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.

In *In re Reinstatement of Kamins,* 752 P.2d 1125, 1130 (Okla.1988), this Court set out the factors it uses when considering an application for reinstatement. They are "(1) the present moral fitness of the petitioner, (2) the demonstrated consciousness of the wrongful conduct and disrepute which the conduct has brought the profession, (3) the extent of petitioner's rehabilitation, (4) seriousness of the original misconduct, (5) conduct subsequent to discipline[,] (6) the time which has elapsed since the original discipline[, (7)] the petitioner's character, maturity, and experience at the time of disbarment and [(8)] the petitioner's present competence in legal skills."

Neither the PRT or the Bar question Brown's present moral fitness, his good conduct subsequent to the discipline, or his present competence in legal skills. At issue here is Brown's consciousness of the wrongful conduct, the extent of his rehabilitation, and the seriousness of the original misconduct.

■ The evidence of Brown's consciousness of the wrongful conduct was conflicting. Brown testified that he knew that he didn't intentionally do anything wrong but stipulated before the district attorney to 29 cases of embezzlement or forgery. He testified that he never took money to benefit himself. Based on the number and nature of transgressions, we, like the PRT, find it difficult to be believe Brown never intended to benefit from his acts. Further, it is unclear where the money went if not to benefit Brown. Further, Brown stated that his misconduct was the result of his "breakdown" which started in 1987. However, this does not explain at least two instances which occurred before 1987. Brown has not shown by clear and convincing evidence that he possess the requisite consciousness of the wrongful conduct.

■ We also question the extent of Brown's rehabilitation. Dr. Borrell testified that there was a chance Brown's emotional problems could recur. He testified that the problem would recur if Brown stopped his medication. Most of the witnesses testifying on behalf of Brown thought Brown was rehabilitated because of his interest in returning to the practice of law. While this interest in once again practicing law shows an improvement in Brown's condition, it is not conclusive proof of Brown's rehabilitation. At the time of the hearing, Brown was continuing to accept disability benefits for his emotional condition, which is an indication that he is not rehabilitated. Considering the testimony of the witnesses, Brown has not shown by clear and convincing evidence that he is rehabilitated sufficiently to practice law. This Court, like the PRT, "has reservation[s] as to [Brown's] ability to maintain such sought af-

ter stability when once again placed in a position of direct responsibility as an attorney with the inherent stresses therein."

Lastly, we consider the seriousness of the original misconduct. In consideration of his plea bargain, Brown stipulated to 29 allegations of embezzlement or forgery. Ron Chambers, the assistant district attorney, felt like there was sufficient evidence to file charges on all 29. Of these 29 clients, 23 were in addition to the nine referenced in Brown's resignation. It is unclear if the ten which had yet to be investigated were included in the 29. By Brown's own admission, his actions brought disrepute on the legal profession.

■■■■ Brown's original misconduct does not necessarily block his readmission. *Wright,* 907 P.2d at 1060. However, it is one consideration, and the more severe the original conduct, the heavier the burden is on the petitioner. *In re Reinstatement of Wright,* 907 P.2d at 1062. Thus, taking into consideration the seriousness and the exceptionally high number of occurrences of the original misconduct, Brown has not meet his burden of showing that he should be reinstated.

### V. COSTS

The Bar has filed an Application to Assess Costs in the amount of $1,754.51. Pursuant to Rule 11.1(c) of the RGDP and after a review of the application and attached exhibits itemizing the expenses, the application is granted.

### VI. CONCLUSION

Even though Petitioner has made great strides in his rehabilitation, he has not shown by clear and convincing evidence that he should be readmitted to the practice of law. After giving the proper weight to the severity and extended of his original transgressions, we are not convinced that Brown fully understands the seriousness of his misconduct and the disrepute he has brought on the profession. Neither are we convinced that his problems will not reoccur once he is subjected to the stresses inherent in practicing law. For these reasons, the Application for Reinstatement is denied and Petitioner is ordered to pay the costs of the proceedings no later than 90 days from the final date of this opinion.

REINSTATEMENT DENIED; COSTS ASSESSED.

WILSON, C.J., KAUGER, V.C.J., and LAVENDER, SIMMS, SUMMERS, WATT, JJ., concur.

HARGRAVE, J., concurs in result.

OPALA, J., not participating.