2004 OK 77

**In the Matter of the REINSTATEMENT OF Joe R. FARRANT, to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**No. SCBD 4891.**

Supreme Court of Oklahoma.

Oct. 5, 2004.

Joe R. Farrant, Junction City, KS, Pro Se Petitioner.

Dan Murdock, General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for Respondent.

HARGRAVE, J.

¶1 Joe R. Farrant ("Applicant") seeks readmission to the Oklahoma Bar Association and the roll of attorneys after more than ten years of license suspension. In 1994, this Court suspended Farrant for one (1) year, to

be followed by a probationary period of (1) year during which Farrant would be required to attend weekly Alcoholics Anonymous meetings and monthly sessions with a professional counselor. *State of Oklahoma ex rel. O.B.A. v. Farrant,* 1994 OK 13, 867 P.2d 1279. In that proceeding, we held that the Oklahoma Bar Association ("Bar") had established by clear and convincing evidence that Farrant converted client funds entrusted to him for a specific purpose and that he knowingly misrepresented the facts surrounding the complaints to the Oklahoma Bar Association.

¶2 Farrant would have been entitled to reinstatement upon application after the one-year period of suspension expired, subject only to the one-year probationary period.[1] No order of the Court would have been necessary. Farrant did not seek reinstatement.

¶3 For approximately seven years following his suspension, the applicant worked at a variety of different jobs including some substitute teaching, limousine driving, selling insurance, selling mobile homes and managing a mobile home dealership. Farrant testified that after his conviction in federal court in 2001 for child support evasion, he began to "turn his life around." He stopped drinking, attended counseling sessions during 2001 and attended a few AA meetings. To summarize Farrant's testimony, he really did not do anything to "turn his life around" until 2001, at which time he began to think about the possibility of having his license to practice law in Oklahoma reinstated.

¶4 Farrant filed the current petition for reinstatement on March 4, 2004.[2] After a hearing at which only Farrant testified in support of the petition, the Trial Panel of the Professional Responsibility Tribunal recommended that the petition for reinstatement be denied. The Trial Panel found that Farrant has not engaged in the unauthorized practice of law since the time of his suspension. The Trial Panel concluded, however,

that Farrant failed to offer credible evidence of his competency and learning in the law and that he had not submitted credible evidence of good moral character, pursuant to Rule 11.5, Rules Governing Disciplinary Procedure. The applicant did not file a brief with this Court after being given the opportunity to do so. Upon *de novo* review, we find that the applicant has not established by clear and convincing evidence the prerequisites to allow reinstatement.

■ ¶5 Rule 11.5, Rules Governing Disciplinary Proceedings sets out the specific findings that must be made as a prerequisite to reinstatement: 1) whether the applicant possesses the good moral character that would entitle him to be admitted to the Oklahoma Bar Association, 2) whether the applicant has engaged in any unauthorized practice of law during the period of suspension, and 3) whether the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma. A lawyer seeking reinstatement to the bar bears a heavy burden. *Matter of Reinstatement of Brown,* 1996 OK 95, 925 P.2d 44, 49.

¶6 Rule 11.5(c) provides that an applicant whose membership has been suspended for a period of five (5) years or longer shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Before the applicant is required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency.

■ ¶7 The requirement that those suspended for five years or more must take and pass a regular bar examination, unless clear and convincing proof to the contrary is of-

---

1. Rule 11.8, Rules Governing Disciplinary Proceedings 5 O.S.2001, Ch. 1, App. 1–A, provides that a lawyer who has been suspended for two years or less upon disciplinary charges may resume practice upon expiration of the period of suspension by filing an affidavit as required therein.

2. Farrant filed, but voluntarily withdrew, a petition for reinstatement in 2002.

fered, creates a presumption that one who has been suspended for five years will not possess sufficient competency in the law to be reinstated, absent an extraordinary showing to that effect. See, *Matter of Reinstatement of Essman*, 1987 OK 102, 749 P.2d 103, 104 ("As to the question of whether applicant has maintained a level of competence in the practice of law, the length of time applicant's license has been in suspension itself weighs against an affirmative finding.")

¶8 We said in *Essman* that the applicant has a burden of proving by clear and convincing evidence, in order to gain reinstatement without re-examination, that: his conduct will conform to the standards required of a member of the Bar, that he is possessed of good moral character, that he has not engaged in the practice of law during the period of suspension and that he has maintained competency to practice law. 749 P.2d at 104.

¶9 Farrant has not been a licensed attorney since 1994. He did not take any continuing legal education (CLE) courses until 2003, when he took 12 hours.[3] At the time of the hearing before the Trial Panel on June 2, 2004, applicant had taken one internet CLE course in 2004 and stated that he plans to finish other seminars. In 2000, applicant received some mediation training and did some mediating in Texas.[4] After withdrawing his 2002 petition for reinstatement, Farrant began to read the Oklahoma Bar Journal.[5] In 2001, applicant began doing some abstracting work.[6]

¶10 *In Matter of Reinstatement of Turner*, 1999 OK 72, 990 P.2d 861, the attorney was suspended in 1993 for non-payment of dues, after having been previously suspended and reinstated at different times for failure to pay membership dues and for failure to comply with the MCLE requirements. He sought reinstatement in 1998. This Court found that Turner had engaged in the unauthorized practice of law while suspended, and that this was a sufficient basis on which to deny the application. We went on to find, however, that the applicant also lacked the necessary competency and learning in the law required for admission to the Bar. Turner had received 24 hours of CLE credit, but had not attended a CLE class since 1995. Turner also stated that he read the Bar Journal and other legal articles. Otherwise, we said, there was no evidence that Turner possessed the competency and learning required for reinstatement. We held that Turner failed to prove by clear and convincing evidence that he currently possessed the requisite legal skills for reinstatement. *In Matter of Reinstatement of Hardin*, 1996 OK 115, 927 P.2d 545, reinstatement was denied where applicant had attended 18 hours of CLE in the year preceding his application for reinstatement and had testified that he regularly read the Bar Journal.

¶11 In the present matter, applicant did not attend any CLE courses until the 12 hours in 2003. He did not pay any dues until just before filing the petition for reinstatement. His evidence of his competency and learning in the law is that he read the Bar Journal, took 12 hours of CLE in 2003, took some CLE in 2004 and has worked on ab-

---

**3.** Farrant testified that, "the only time I involved myself in any continuing legal education was after my discussions with [Bar Counsel] when you expressed concerns, justifiably so, over my competency in the law."

**4.** Applicant testified that before moving to Kansas in December of 2000, he got mediation training in Texas and did some mediating.

**5.** Farrant testified that after he withdrew his first petition for reinstatement in 2002, he "started taking the Bar Journal, of course, and actually reading it." Farrant's testimony recognized the concern posed about the length of time that he has been away from the practice of law and "in comparison, the fairly minimal amount of time I've spent reeducating myself."

**6.** Applicant testified: "My work in the last three years ... since I got away from meaningless jobs and recognized that I had the ability to kind of pull myself up by my own boot straps, I got on the Internet and found that there's a market for people who can do some independent abstracting, particularly in the refinance market that exists today and that's what I've done for the last two-plus, two-and-a-half years. I cover a number of counties in Kansas and I do property search work. I can't render opinions as to the state of title, but I can do search work and—I can close loans and—and so on. So that's—that has kept me pretty much abreast of—of the law in that area...."

stracts and was involved in mediation. We agree with the Trial Panel that Farrant's efforts at maintaining competency and learning in the law fall short of that required for readmission to the practice of law. Here, the record fails to contain clear and convincing evidence of applicant's legal learning and competence in the law.

¶ 12 Farrant also failed to offer clear and convincing evidence of the good moral character required for admission to the Oklahoma Bar Association. Farrant did not present any witnesses to the Trial Panel as to his good moral character.[7] Farrant testified as to the ways in which he has turned his life around in the last two or three years.

¶ 13 While Farrant's efforts in turning his life around are praiseworthy, he has failed to sustain the heavy burden required for reinstatement. See, *Matter of Reinstatement of Hardin,* 927 P.2d at 546, where, in spite of the testimony of five witness in support of reinstatement and the Trial Panel's finding that Hardin had undergone a turn-around in his life based upon his religion, the fact that the applicant still owed both federal and state income taxes caused the Trial Panel to recommend that reinstatement be denied, and this Court agreed.

¶ 14 In the present matter, Farrant testified that he did not pay the costs of the 1994 suspension until General Counsel for the Bar suggested that he pay to avoid a formal complaint being filed. As to the child support payments, Farrant admitted that he was not paying the child support directed by the court, but he could have paid something. Farrant still has child support arrearage of approximately $19,000.

¶ 15 General Counsel for the Bar advised the Trial Panel that Farrant was convicted in federal court on September 5, 2001, under to 18 U.S.C. § 228(A)(1), for failure to pay legal child support obligations, at which time the court sentenced Farrant to a period of two years, suspended, with special conditions of supervision that he participate in an approved program for substance abuse that would include testing for drug and alcohol use.[8] On cross-examination the Bar's counsel elicited that the only formal counseling that Farrant received was during the time that he was on federal probation, which was a condition thereof. When questioned whether he continued the counseling and AA attendance after the two-year probation ended, applicant replied that he did not. He stated that counseling continued for about one year and the counselors then suggested that he had reached the maximum benefit from counseling.

¶ 16 Farrant's testimony reflects that, although he has no current obligation to pay child support, he does have the child support arrearage, which was the reason for the federal court action. Of the $27,000 arrearage, he has paid about $8,000, indicating a balance of about $19,000. Farrant also is in arrears for back income taxes. Farrant testified that 2003 taxes are fully paid, but that there are taxes due from the late 1980s and that the last figure he was aware of was $14,000 or $17,000.

¶ 17 At the time of his suspension by this Court in 1994, Farrant previously had received a private reprimand from this Court in 1985, in SCBD 3230. On October 11, 1994, Farrant was suspended by the Supreme Court of the State of Colorado for three (3) years and ordered to pay costs and make restitution to his client for any losses suffered. Farrant testified at the hearing that he did not reimburse the client because he did not believe that the client suffered any

---

7. Rule 11.3(c) provides that the applicant shall furnish to the General Counsel the names and addresses of all witness who will be called to testify before the Trial Panel as to his good moral character. Affidavits will not be considered. The Bar's General Counsel provided the Trial Panel with copies of several letters, written in 2002, that he had received in response to contacting various people listed by Farrant. These letters reflect that the writers believed the applicant to have good moral character; some of the writers had not had contact with the applicant for several years, or since his suspension.

8. The Bar Counsel elicited from Farrant that an earlier order entered in the District Court of Garfield County in 1997 had found Farrant in arrears for child support in the amount of $16,613.80 and reduced the child support payment from $440 to $267 per month.

loss, and that he had no intention of seeking reinstatement in Colorado.[9]

¶18 The burden of proof, by clear and convincing evidence, in all reinstatement proceedings shall be on the applicant. Rule 11.4, R.G.D.P. An applicant seeking reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. *Id.* Feelings of sympathy toward the applicant must be disregarded. *Id.* Farrant's quest for reinstatement falls short of that heavy burden required for reinstatement. He has failed to prove by clear and convincing evidence that he possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma after a suspension for a period of five years or longer, and that he possesses the good moral character that would entitle him to be admitted to the Oklahoma Bar Association. Rule 11.5 R.G.D.P. Accordingly, the petition for reinstatement is denied.

¶19 The Bar has filed an application to assess costs in the amount of $509.25. Applicant has filed no objection to the assessment of costs. The applicant is directed to pay costs in the sum of $509.25 within ninety (90) days of the date that this opinion becomes final.

**PETITION FOR REINSTATEMENT DENIED; COSTS ASSESSED.**

¶20 CONCUR: WATT, C.J., OPALA, V.C.J., LAVENDER, HARGRAVE, KAUGER, WINCHESTER, EDMONDSON, TAYLOR, JJ.

9. Case No. 94SA203 before the Supreme Court of Colorado on October 11, 1994 suspended Farrant for three years. The disciplinary action arose out of Farrant's representation of clients in a bankruptcy. He failed to appear at, or notify his clients of, a hearing on his motion for postconfirmation modification, which was denied. Further, he failed to respond to a motion to dismiss and the bankruptcy court dismissed the proceedings. He did not request reconsideration of the dismissal order. The hearing board found that at the time of the dismissal, the clients had approximately four installment payments left under their Chapter 13 reorganization. As a result of Farrant's inaction and the dismissal, the clients "owed their creditors approximately $17,000 instead of $1,700 had the bankruptcy been preserved." Farrant failed to answer or otherwise respond to the Colorado complaint. The Supreme Court of Colorado ordered Farrant to pay costs of $316, and as a further condition of reinstatement, must demonstrate that he repaid the complaining witnesses (clients) in an amount equal to any sums they actually lost due to the respondent's professional misconduct."