2008 OK 25

**In the Matter of the REINSTATEMENT OF Kenneth L. HIRD to Membership in the Oklahoma Bar Association and to the Roll of Attorneys.**

**SCBD No. 5288.**

Supreme Court of Oklahoma.

March 25, 2008.

Richard D. White, Jr., Tulsa, OK, for Petitioner.

Loraine D. Farabow, Assistant General Counsel, Oklahoma Bar Association, for Respondent.

OPALA, J.

¶1 Kenneth L. Hird (Hird or petitioner) seeks reinstatement of his membership in the Oklahoma Bar Association (OBA) and of his status upon the Roll of Attorneys. In 1998 he submitted his first petition for reinstatement which was denied.[1] This is his second petition for reinstatement to the Bar.

## Background

¶2 Hird was admitted to the OBA in 1980. From January 1988 through April 1989 he was employed by Caprock Savings and Loan Association (Caprock) in the metropolitan area of Dallas, Texas. He simultaneously held the positions of executive vice-president, chief lending officer and general counsel. During this period Hird (and his co-defendants in a federal criminal case) engaged in a fraudulent scheme that made Caprock's financial position appear to be better capitalized than it was.[2] Caprock lost tens of millions of dollars, perhaps a hundred million, as a result of this scheme.[3] In 1992 Hird pled

1. The court denied Hird's first reinstatement quest because of the seriousness of his conviction, the disrepute it brought on the legal profession, the short lapse of time between his resignation and reinstatement request, and his failure to show a change in his moral character. Having found that he did not meet his burden concerning these factors, the court did not address other factors considered in the proceeding. *Matter of the Reinstatement of Hird*, 2001 OK 28, ¶ 19, 21 P.3d 1043, 1046.

2. Although the acts taken in the scheme were far more complicated than this description, Hird and his co-defendants defrauded Caprock by lending money and, in exchange, personally receiving capital from the borrower which was used to purchase stock in Caprock.

3. The actual loss to Caprock may have been approximately one hundred million. Transcript, p. 93.

guilty to one count of bank fraud and of money laundering.[4] The same year he tendered his resignation from the OBA. Because he cooperated with federal authorities, he received a lighter sentence (45 months of incarceration), ultimately serving only 24 and one-half months and no fine stood imposed against him.[5]

## Standard of Review and Rules Governing Reinstatement Proceedings

 ¶3 In matters dealing with licensing and disciplining of lawyers this court is not confined to considering only the trial panel's recommendation. Rather, it exercises independently its original jurisdiction and applies a *de novo* standard of review.[6] Although the panel's findings and recommendations will receive great weight, they are merely advisory in nature.[7] An applicant for reinstatement bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is indeed warranted[8] and is required to present stronger proof of qualifications than one who seeks initial admission to practice.[9]

 ¶4 Reinstatement proceedings are governed by Rule 11, Rules Governing Disciplinary Proceedings, (RGDP), 5 O.S.2001, Ch. 1, App. 1–A. Rule 11.5[10] requires the trial

---

4. Petitioner's acts were in violation of Title 18 of the United States Code.

5. In 1992 Hird notified the OBA of his conviction and tendered his resignation. The court approved Hird's resignation pending disciplinary proceedings in 1993. A more detailed description of Hird's practice of law and of the events surrounding his resignation and the first petition for reinstatement are found in *Matter of Hird, supra* note 1.

Petitioner admits that he profited through the transactions related to the fraudulent scheme. Further, after leaving Caprock and upon his return to private practice, he received a retainer of $150,000.00 from one of the parties to the Caprock transactions but did not perform any work for that person. Hird's debts were later discharged in bankruptcy proceedings in 1996. See *Hird, supra* note 1, at ¶4, at 1045.

6. *Matter of the Reinstatement of Kamins*, 1988 OK 32, ¶18, 752 P.2d 1125, 1129.

7. *Kamins, supra* note 6, at ¶18, at 1129.

8. Rule 11.4, Rules Governing Disciplinary Proceedings, (RGDP), 5 O.S.2001, Ch. 1, App. 1–A, sets out the standards for reinstatement to the Bar. It provides:

"An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules."

9. For the terms of Rule 11.4, see *supra* note 4.

10. The terms of Rule 11.5, RGDP, 5 O.S.2001 Ch. 1, App. 1, provide:

"At the conclusion of the hearing held on the petition for reinstatement, the Trial Panel of the Professional Responsibility Tribunal shall file a report with the Supreme Court, together with the transcript of the hearing. Said report shall contain specific findings upon each of the following:
(a) Whether or not the applicant possesses the good moral character which would entitle him to be admitted to the Oklahoma Bar Association;
(b) Whether or not the applicant has engaged in any unauthorized practice of law during the period of suspension, disbarment or resignation;
(c) Whether or not the applicant possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma, except that any applicant whose membership in the Association has been suspended or terminated for a period of five (5) years or longer, or who has been disbarred, shall be required to take and successfully pass the regular examination given by the Board of Bar Examiners of the Oklahoma Bar Association. Provided, however, before the applicant shall be required to take and pass the bar examination, he shall have a reasonable opportunity to show by clear and convincing evidence that, notwithstanding his long absence from the practice of law, he has continued to

panel to make certain findings concerning an applicant's (1) moral character (2) competency in the law and (3) participation in any unauthorized practice of law during the period of suspension, disbarment or resignation. In addition to the reinstatement standards found in Rule 11.4, the court also considers: (1) petitioner's present moral fitness; (2) the demonstrated consciousness of past wrongful conduct and the disrepute it has brought upon the legal profession; (3) the extent of petitioner's rehabilitation; (4) the seriousness of the original misconduct; (5) conduct subsequent to the imposition of discipline; (6) the time which has elapsed since the original discipline; (7) petitioner's character, maturity and experience at the time of discipline or resignation; and (8) petitioner's present competence in legal skills.[11]

### PRT Report

¶ 5 Following a hearing the PRT panel issued its report on 13 August 2007. Through the Office of General Counsel, the OBA made no recommendation to the panel concerning Hird's reinstatement. The PRT recommends that petitioner's reinstatement be denied. Petitioner and the OBA's General Counsel's Office have since filed separate briefs in this court.[12]

¶ 6 The trial panel reported that (1) a significant amount of time has elapsed since petitioner's conviction (2) witnesses on Hird's behalf gave compelling testimony concerning his present good character and ethics[13] and (3) petitioner has not engaged in the unauthorized practice of law. In support of its recommendation that Hird's petition for reinstatement be denied, the PRT panel identified the following factors: (1) the seriousness of the Hird's offense (2) petitioner demonstrated consciousness of the wrongful conduct in which he engaged but did not offer any direct evidence to show his realization of the disrepute which his criminal conduct followed by conviction has brought upon the legal profession (3) Hird has made no attempt or even gesture at restitution (noting no restitution was ordered as part of his sentence) and (4) the evidence presented was insufficient to show petitioner possesses the competency and learning in the law required for admission to practice.

### Analysis

¶ 7 Before turning to a review of the evidence presented at the PRT hearing, we first address the following sentence contained in the PRT report: "[t]he Trial Panel considers the millions of dollars of taxpayers' money lost as a result of Hird's criminal

---

study and thus has kept himself informed as to current developments in the law sufficient to maintain his competency. If the Trial Panel finds that such evidence is insufficient to establish the applicant's competency and learning in the law, it must require the applicant to take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor."

11. *Kamins, supra* note 6, at ¶ 20, at 1130.

12. The OBA in its brief does not give a recommendation. It does note that "[w]hen Hird's criminal conduct is viewed in conjunction with violations of his legal and professional duties—as well as the immense financial harm he caused his corporate client, its investors, and the general public—it is difficult to say whether Petitioner has yet to meet the heavy burden of proof required for reinstatement at this point in time...." Respondent's Brief in Chief, p. 4.

At the time of the petitioner's first quest for reinstatement the position of the PRT panel and that of the OBA differed from those occupied by them here. There the panel recommended Hird

be readmitted. The OBA was against his reinstatement. For more information about the court's earlier decision see *supra* note 1.

13. The PRT report requested that the issue of the use of affidavits be resolved in light of the terms of Rule 11.3(c). The latter's terms provide:

c) At least ten (10) days before the hearing, the Applicant shall furnish to the General Counsel the names and addresses of all witnesses who will be called to testify before the Trial Panel as to his good moral character. Affidavits will not be considered.

In reinstatement proceedings character witness affidavits have been accepted where, as here, the parties have stipulated to their use. See *Matter of the Reinstatement of Trimble*, 2007 OK 8, ¶ 8, 155 P.3d 792, 792; *Matter of the Reinstatement of Spilman*, 2004 OK 79, ¶ 15, 104 P.3d 576, 579; *Matter of Swant*, 2003 OK 9, ¶ 10, 65 P.3d 275, 277; *Matter of Dennison*, 1996 OK 24, ¶ 5, 913 P.2d 1315, 1316.

The PRT noted that one of petitioner's witnesses, an attorney, was also his brother-in-law. Another witness, an Assistant United States Trustee, also had a "family connection" with petition-

conduct to be virtually insurmountable...." To the extent that the panel's statement may suggest that the nature and circumstances of an offense may pose an axiomatic barrier to a lawyer's reinstatement quest, we urge a cautionary reminder. The court has categorically rejected the notion that the commission of a felony forever bars an applicant from reinstatement.[14] A lawyer's commission of a felony or other grave misconduct is not an insurmountable barrier to reinstatement. The decision whether to reinstate one to the Bar is made on a case-by-case basis.[15] Each case must be reviewed on its own merits and demerits, and the decision to be made is to be bottomed on the evidence presented and the circumstances peculiar to that case.[16]

■ ¶ 8 The court has denied reinstatement based on the seriousness of the offense and the disrepute a lawyer's conduct has cast on the legal profession.[17] The offense committed by Hird—that of bank fraud and money laundering—was not only a serious crime but also one of significant consequence. The PRT panel reported it could find no lawyer disciplinary or reinstatement case that dealt with an amount of money as sizeable as that here. The loss to Caprock depositors and the general public whose taxes subsidized the government-insured losses to the savings and loan institution amounted to perhaps a hundred million dollars [18] Petitioner's acts directly and indirectly caused financial harm to many individuals. Moreover, in his position

as general counsel for Caprock, Hird failed to uphold the ethical duties the Bar imposes on its members. His misconduct hence reflects directly and adversely upon the legal profession. While Hird's testimony and that of the witnesses given on his behalf reveal that petitioner recognizes the wrongfulness of his conduct, the PRT believes that there was a lack of proof concerning the impact his misconduct brought upon the legal profession.

■ ¶ 9 Here the seriousness of the offense and the disrepute it brings upon the legal system continue to be a critical obstacle to petitioner's reinstatement. Mere lapse of time does not ameliorate the seriousness of past wrongdoing.[19] Neither is petitioner's conduct over the last fourteen years sufficient to overcome the grave nature of the offense.[20] A petitioner's rehabilitation is not the sole consideration in reinstatement proceedings. It is the duty of the court to safeguard the interests of the public, the courts and the legal profession.[21] The court must also determine that reinstatement would not adversely affect the Bar.[22] Here petitioner's acts were not only unlawful, but because he served as general counsel to Caprock they were a violation of his ethical duties to the institution and its depositors. This brings disrepute to the Bar and undermines the public's confidence in the integrity of its members. The court has recognized that the more severe was the past miscon-

er. Both parties addressed this early in individual testimony.

**14.** *Matter of Reinstatement of Wright*, 1995 OK 128, ¶ 7, 907 P.2d 1060, 1063.

**15.** *Wright, supra* note 14, at ¶¶ 6–7, at 1063.

**16.** *Matter of Reinstatement of Cantrell*, 1989 OK 165, ¶ 7, 785 P.2d 312, 314.

**17.** *Matter of Reinstatement of Page*, 2004 OK 49, ¶ 19, 94 P.3d 80, 86; *Matter of Reinstatement of Smith*, 1994 OK 19, ¶ 12, 871 P.2d 426, 429; *Matter of Reinstatement of Peveto*, 1994 OK 44, ¶ 7, 880 P.2d 331, 332.

**18.** See *supra* note 3.

**19.** In *Matter of Reinstatement of Page* the court has reasoned that passage of time has not lessened the seriousness of wrongdoing. *Page, supra* note 17, at ¶ 13, at 84.

In his brief Hird urges the court denied his first reinstatement petition in part because "given the seriousness of Hird's misconduct, ... insufficient time had elapsed...." (Petitioner's brief, p. 14) According to Hird, the seriousness of his misconduct has been "leavened" by the passage of time and enough time has now elapsed for his reinstatement.

**20.** The court likewise has reasoned that commendable conduct over time is insufficient to overcome the serious nature of an offense. *Page, supra* note 17, at ¶ 14, at 85. Reinstatement is not automatically granted on evidence that the applicant has engaged only in proper conduct, even where no contrary evidence is presented. *Cantrell, supra* note 16, at ¶ 2, at 313 (citing *Matter of Reinstatement of Sharpe*, 499 P.2d 406, 409).

**21.** *Smith, supra* note 17, at ¶ 6, 428.

**22.** *Smith, supra note* 17, at ¶ 6, at 428.

duct the heavier is the burden cast on an applicant to gain reinstatement.[23] Petitioner's burden here is indeed heavy. In light of the seriousness of the misconduct and its impact on the Bar, we cannot say that he has met his burden.

¶ 10 Reinstatements have been denied where a petitioner has failed adequately to show current competency and learning in the law required for admission to the Bar.[24] Since his release from prison Hird has worked as a paralegal, a human resource director, and most recently as a landman. Because these positions deal with some aspect of the law, he urges that his work, reading of the Bar journal and completion of some continuing legal education hours should serve to demonstrate his current legal competency sufficient for admission to the Bar. A review of the hearing's transcript reveals Hird's work as a paralegal occurred shortly after his release from prison in 1994. According to the exhibits submitted at the hearing, he has taken only three hours of continuing legal education since his first petition for reinstatement was denied in 2001. Although Hird's work as a human resource director and landman relate to various aspects of the law, given the length of time that has elapsed since petitioner has conducted legal research or attended more than three hours of legal education, we do not believe that he has shown by clear and convincing evidence that he possesses the current competency and learning for admission to the Bar.[25]

¶ 11 Witnesses called by Hird attested to his current good character, dedication to his family and values, and excellent job performance since his release from prison. The journey petitioner has traveled since his conviction is a difficult one, and he is to be commended for the changes in his attitude and conduct. Although we have sympathy for his present circumstances, we must be mindful that personal and emotional considerations must be disregarded.[26]

¶ 12 The pertinent factors addressed compel our conclusion that today we cannot justify allowing this petitioner to regain legal licensure. It is neither in the best interest of the Bar nor in that of the public.[27] Lawyers must fully qualify for fitness in **unbonded fiduciary service** to their professional clientele. We cannot certify petitioner's fitness for that important service. His risk category is much too high.

¶ 13 The petition for reinstatement stands denied. Petitioner shall pay to the Oklahoma Bar Association, within 90 days of the date of this order, the costs of this proceeding in the total amount of $1,298.05.

23. *Wright, supra* note 14, at ¶ 4, at 1062; *Matter of Brown*, 1996 OK 95, ¶ 20, 925 P.2d 44, 50.

24. Reinstatements have been denied, in part, on the basis of a failure to adequately show current competence in legal skills. *Matter of the Reinstatement of Massey*, 2006 OK 21, ¶ 15, 136 P.3d 610, 615 (citing *Matter of Reinstatement of Farrant*, 2004 OK 77, 104 P.3d 567; *Matter of Reinstatement of Turner*, 1999 OK 72, 990 P.2d 861; *Matter of Reinstatement of Hardin*, 1996 OK 115, 927 P.2d 545; and *Matter of Reinstatement of Bradley*, 1993 OK 107, 897 P.2d 243). "The requirement that those suspended for five years or more must take and pass a regular bar examination, unless clear and convincing proof to the contrary is offered, creates a presumption that one who has been suspended for five years will not possess sufficient competency in the law to be reinstated, absent an extraordinary showing to that effect." See, *Matter of Reinstatement of Essman*, 1987 OK 102, 749 P.2d 103, 104 ("As to the question of whether applicant has maintained a level of competence in the practice of law, the length of time applicant's license has been in suspension itself weighs against an affirmative finding.")" *Farrant, supra*, at ¶ 7, at 568–69.

25. Hird's exhibits reveal he recently completed three hours of legal education courses via two online seminars. One of these hours would count towards ethics credit. His brief reveals that all other legal education seminars he attended occurred between 1996 and 1999, prior to his first reinstatement quest. His brief reveals that as director of human resources he conducted monthly in-house training sessions which dealt with various aspects of employment law.

26. See Rule 11.4, *supra* note 8.

27. The PRT report and the Office of General Counsel both note that although Hird's sentence did not include any order of restitution, none has been offered by petitioner. The terms of Rule 11.4, RGDP, provide "[i]f applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement." Because of our decision, we need not address this factor.

¶14 WINCHESTER, C.J., EDMONDSON, V.C.J. and OPALA, KAUGER, WATT, TAYLOR, COLBERT and REIF, JJ., concur

¶15 HARGRAVE, J., dissents