OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF BLAKE

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 IN THE MATTER OF THE REINSTATEMENT OF BLAKE
2016 OK 33
Case Number: SCBD-6237
Decided: 03/22/2016
IN THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 33, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN THE MATTER OF THE REINSTATEMENT OF GLEN JOSEPH BLAKE, TO MEMBERSHIP IN THE OKLAHOMA BAR ASSOCIATION AND TO THE ROLL OF ATTORNEYS

PROCEEDING FOR REINSTATEMENT
TO THE OKLAHOMA BAR ASSOCIATION

¶0 Petitioner, Glen Joseph Blake sought reinstatement to membership in the Oklahoma Bar Association following his voluntary resignation pending disciplinary proceedings approved on June 17, 2008. After a hearing, the trial panel of the Professional Responsibility Tribunal unanimously recommended reinstatement. Upon de novo review we approve Petitioner's reinstatement subject to his payment of costs in the amount of $22.40 within thirty (30) days from the date this opinion becomes final.

PETITION FOR REINSTATEMENT GRANTED; COSTS IMPOSED

Sheila J. Naifeh, Tulsa, Oklahoma, for Petitioner.
Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Respondent.

PER CURIAM:

¶1 The petitioner, Glen Joseph Blake, filed a petition requesting reinstatement as a member of the Oklahoma Bar Association. Blake voluntarily resigned from the OBA during the pendency of disciplinary proceedings. Having found the petition supported by clear and convincing evidence, we issue an order granting reinstatement. We further sustain the OBA's application for assessment of costs in the amount of $22.40, and direct Petitioner Blake to pay the same within thirty (30) days of this opinion.

Facts and Procedural History

¶2 Blake graduated from the University of Tulsa College of Law in May of 2000. He was admitted to the OBA on September 25, 2000. Prior to attending law school, Blake battled with drug and alcohol addiction. In the early 1990's, Blake was arrested on two occasions for alcohol-related offenses. In 1994, he sought professional help through a drug treatment facility. Blake successfully maintained his sobriety until approximately 2003, when he began using prescription pain medication for an abscessed tooth. His use of pain medicine evolved into a full relapse. He transitioned from pain medicine to alcohol, and later progressed to methamphetamine use and addiction.

¶3 In June of 2007, Blake was arrested by the Tulsa County Sheriff during his attempted sale of methamphetamine to a confidential informant. He was subsequently charged with one felony count of trafficking in illegal drugs in violation of 63 O.S. 2-415(B).[1] On March 17, 2008, Blake entered a blind plea of guilty to the trafficking charge. Judge William Kellough sentenced him to a term six years imprisonment with the Oklahoma Department of Corrections.

¶4 On February 15, 2008, Blake submitted an affidavit of resignation pending disciplinary proceedings to the Oklahoma Supreme Court.[2] We approved Blake's resignation by an order entered on June 17, 2008. Although Blake failed to timely file the affidavit required by Rule 9.1 of the Oklahoma Rules Governing Disciplinary Proceedings, 5 O.S.2011, ch. 1, app. 1-A, he eventually filed the affidavit on April 30, 2015.

¶5 Blake was released from prison on parole in June 2010. Blake's criminal sentence required him to complete a number of community service hours. He began satisfying the community service obligation by working in the Tulsa County Public Defender's office. Initially, Blake performed primarily clerical tasks; however, he later worked as a paralegal, assisting with investigations and case preparation. After concluding his community service in December of 2010, Blake was offered a position with the Public Defender.[3] Testimony presented to the Professional Responsibility Tribunal detailed Blake's duties with the Public Defender's office. His responsibilities included conducting client interviews at the jail, preparation of client files, and assisting attorneys with general clerical and investigative work. Blake also conducted legal research, drafted motions, and provided support to attorneys during court proceedings. All of this work was performed on behalf of and under the direct supervision of licensed attorneys. According to Blake, he always informed clients that he was not a licensed attorney. He emphatically denied offering legal advice or engaging in the unauthorized practice of law. Tulsa County Public Defender, Rob Nigh, praised Blake's work-ethic and noted his intention to offer him a job as an attorney, conditioned on reinstatement.

¶6 On February 12, 2015, Blake filed a petition seeking reinstatement as a member of the OBA. A hearing was held before the PRT, and the panel unanimously recommended Blake be reinstated. In accordance with RGDP Rules 11.4 and 11.5, the PRT issued a report on September 23, 2015 with the following findings: (1) Blake filed a petition seeking reinstatement with the OBA; (2) Blake complied with all procedural rules delineated in the RGDP for reinstatement inquiries; (3) Blake demonstrated, by clear and convincing evidence, that he possesses the requisite good moral character for re-admission to the OBA; (4) Blake established by clear and convincing evidence that he has not engaged in the unauthorized practice of law in the State of Oklahoma; and (5) Blake completed 46.5 hours of MCLE in calendar years 2014 and 2015. However, the PRT Report did not address whether Blake possessed the requisite "competency and learning in the law" and whether he was exempt from retaking the bar examination, as required by RGDP Rule 11.5(c).[4]

¶7 Following entry of the PRT Report, Blake filed his brief in support of reinstatement. The OBA waived its right to submit an answer brief in this cause, but acknowledged support for Blake's reinstatement.

 

Standard of Review

¶8 Reinstatement matters are initially conducted before the PRT. The panel is obligated to provide this Court with a detailed summary of their factual and legal determinations. See RGDP Rules 11.3-11.5. A report from the PRT is required to include specific determinations regarding whether: 1) the petitioner possesses the good moral character which would entitle him to be admitted to the Bar Association; 2) the petitioner has not engaged in the unauthorized practice of law during the period of suspension; and 3) the petitioner possesses the competency and learning required for admission to the practice of law. In re Reinstatement of Pacenza, 2009 OK 9, ¶ 9, 204 P.3d 58, 62. Failure to establish any of these essential prerequisites necessitates denial of reinstatement. Any recommendations of the PRT are merely advisory and the panel's conclusions are not binding. In re Reinstatement of Kerr, 2015 OK 9, ¶ 6, 345 P.3d 1118, 1121. This Court conducts a review of PRT findings by "exercise[ing] independently its original jurisdiction and appl[ying] a de novo standard of review." In re Reinstatement of Hird, 2008 OK 25, ¶ 3, 184 P.3d 535, 537. We are vested with a nondelegable, constitutional duty to regulate the practice of law. In re Reinstatement of Mumina, 2009 OK 76, ¶ 7, 225 P.3d 804, 808. Our primary objectives when weighing an attorney's request for reinstatement are protecting the public and maintaining confidence in the OBA. In re Reinstatement of Page, 2004 OK 49, ¶ 3, 94 P.3d 80, 82.

¶9 Additionally, RGDP Rule 11.4 provides "[a]n applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar." An attorney seeking reinstatement "bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted." In re Reinstatement of Page, ¶ 2, 94 P.3d at 81. Applicants must present stronger proof of meeting admission standards than an individual seeking to join the OBA for the first time. In re Reinstatement of Otis, 2007 OK 82, ¶ 7, 175 P.3d 357, 361. When evaluating a bid for readmission to the OBA, this Court weighs certain factors, including but not limited to: 1) the applicant's present moral fitness; 2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it has brought upon the legal profession; 3) the extent of rehabilitation; 4) the original misconduct's seriousness; 5) conduct after resignation; 6) time elapsed since the resignation; 7) the applicant's character, maturity, and experience when suspended; and 8) present legal competence. In re Reinstatement of Pacenza, ¶ 9, 204 P.3d at 62. Every reinstatement proceeding must be evaluated and decided on a case-by-case basis, with each result dependent on the particular facts and circumstances. Id.

Analysis

¶10 The record before this Court reflects that Blake was charged and convicted of a very serious felony--trafficking methamphetamine. It is equally clear that Blake has battled with drug and alcohol addiction throughout his life. There is little doubt Blake's substance abuse was the catalyst behind his felony drug conviction. Since being released from incarceration, he has taken great strides toward rehabilitation. Blake has worked diligently to maintain his sobriety and acknowledged the gravity of his wrongdoing. These things were firmly established in the hearing before the PRT.

Felony Conviction

¶11 It is necessary to evaluate Blake's felony conviction and determine if the criminal act should preclude reinstatement to the OBA. Our prior decisions have held that a felony conviction alone will not prevent reinstatement to the OBA. In re Reinstatement of Seelye, 2005 OK 34, ¶ 4, 115 P.3d 836, 839; In re Reinstatement of Page, ¶ 3, 94 P.3d at 82. Nevertheless, the more severe an offense, the heavier burden an applicant must overcome to gain reinstatement. Id. Although this Court applauds rehabilitation efforts and embraces reform through hard work, we will not let feelings of sympathy affect our judgment. See RGDP Rule 11.4 ("Feelings of sympathy toward the applicant must be disregarded.").

¶12 This Court has weighed numerous reinstatement cases involving attorneys who were suspended, disbarred or resigned following a criminal conviction. The facts presented in this proceeding are remarkably similar to a few of these cases. For example, in the case of In re Reinstatement of Wright, 1995 OK 128, 907 P.2d 1060, we weighed a former district attorney's request for reinstatement following his conviction and imprisonment for felony drug crimes. Mr. Wright's license to practice law was suspended for two years and one day as a result of his guilty plea to a charge of distributing cocaine. Id. ¶ 1, 907 P.2d at 1061-1062. Mr. Wright and two other attorneys pooled their money to purchase a small amount of cocaine for their personal use. Id. ¶ 9, 907 P.2d at 1064. After his conviction, Mr. Wright served approximately one year in prison. Id. ¶ 11, 907 P.2d at 1064. Prior to seeking reinstatement to the OBA, Mr. Wright completed his criminal sentence in August 1992. Id. ¶ 13, 907 P.2d at 1064.

¶13 After being released from prison, Mr. Wright worked as a law clerk for three different lawyers. Id. ¶ 11, 907 P.2d at 1064. His duties were performed under the supervision of licensed attorneys. Id. Assignments consisted primarily of legal research and writing, trial preparation, and clerical work. Id. Additionally, clients were informed that Mr. Wright could neither practice law nor offer legal advice. Id. Several witness testified on behalf of Mr. Wright to support his present moral fitness, the remorse he felt as a result of his criminal conviction, and his abstinence from illegal drug use. Id. ¶¶ 12-15, 907 P.2d at 1064-1065. Weighing the various factors required for reinstatement, we concluded, Mr. Wright had met his burden and authorized readmission to the OBA. Id. ¶ 23, 907 P.2d at 1066-1067.

¶14 We handed down another opinion with analogous facts in the case of In re Reinstatement of Johnston, 2007 OK 46, 162 P.3d 922. Mr. Johnston was convicted on five federal drug charges, including: one count of attempting to possess a steroid in violation of 21 U.S.C. § 846, a misdemeanor; three felony counts of using a telephone to facilitate distribution of marijuana in violation of 21 U.S.C. § 843(b); and one felony count of conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. Id. ¶ 1 & 13, 162 P.3d at 923, 925. He served twenty-six months in the penitentiary, followed by three years of supervised release. Id. ¶ 1, 162 P.3d at 923. Mr. Johnston completed his criminal sentence in 2002. Id. ¶ 13, 162 P.3d at 925.

¶15 Following his release from prison in 1999, Mr. Johnston voluntarily resigned from the OBA pending disciplinary proceedings. Id. ¶¶ 13-14, 162 P.3d at 925. Seven years later Mr. Johnston sought reinstatement with the OBA. Id. ¶ 2, 162 P.3d at 923. During the period Mr. Johnston's license was revoked, he worked for a number of lawyers as a paralegal. Id. ¶ 22, 162 P.3d at 926. His responsibilities included "assisting in interviewing clients and witnesses, helping keep track of witnesses and lawyers in the courthouse, assisting lawyers in analyzing cases and legal issues, researching and writing various legal documents such as memoranda, motions, briefs, and objections, all under supervision by the attorneys." Id.

¶16 In addition to the resignation case, Mr. Johnston had been the subject of two prior disciplinary proceedings before this Court. He was suspended in 1993 for professional misconduct.[5] Id. ¶ 11, 162 P.3d at 924-925. Thereafter, we issued a private reprimand for engaging in the unauthorized practice law during his 1993 suspension. Id. ¶ 12, 162 P.3d at 925. Despite the serious nature of his criminal convictions and the three OBA disciplinary matters, we determined Mr. Johnston had satisfied the difficult burden for reinstatement. Id. ¶¶ 35-36, 162 P.3d at 928.

¶17 We declined to authorize reinstatement for a lawyer in the case of In re Reinstatement of Pierce, 1996 OK 65, 919 P.2d 422. Mr. Pierce tendered his resignation while charges of professional misconduct were pending against him. Id. ¶ 1, 919 P.2d at 423. The resignation followed Mr. Pierce's guilty pleas to multiple drug offenses, including: "one count of Conspiracy to Distribute a Controlled Dangerous Substance, Amphetamine (Methamphetamine); three counts of Distribution of a Controlled Dangerous Substance, i.e. Methamphetamine; four counts of Maintaining a Place Where a Controlled Dangerous Substance is Kept; a single count of Distribution of Illegal Drugs; and, two counts of Possession of a Weapon while committing a felony." Id. ¶ 2, 919 P.2d at 423. He was sentenced to twenty years of incarceration, with the final five years suspended. Id. ¶ 3, 919 P.2d at 423. Prior to completion of his criminal sentence, Mr. Pierce sought reinstatement to the OBA. Id. ¶ 3, 919 P.2d at 423. After hearing evidence for and against reinstatement, the PRT recommended that Mr. Pierce be reinstated. Weighing the relevant factors, this Court rejected Mr. Pierce's reinstatement petition. Id. ¶¶ 20-21, 919 P.2d at 426.

¶18 Although Blake's conviction for felony drug trafficking is especially troubling, we believe the mitigating evidence in this case weighs in favor of reinstatement. First, it is important to emphasize that like the attorneys in Wright and Johnston, Blake has completed his criminal sentence. He has expressed deep remorse for his criminal transgressions and professional misconduct. More than thirty individuals, including, judges and attorneys who work daily with Blake, submitted letters recommending reinstatement.

¶19 The overwhelming evidence reflects that Blake is working diligently to maintain his sobriety and is walking a lawful path in life. One of his counselor's noted:

Although [Blake's] obligations are many, he maintains a positive attitude and keeps a strict routine of life balance to ensure his sobriety always comes first. [Blake] attended my IOP classes, 12 step groups, church, gained employment, paid child support, worked in time with his [daughter], maintained a gym membership and completed all the requirements of the court for parole and supervision. In addition he has added working at the courthouse and jail! Glen is an extraordinary man who has demonstrated over a number of years he is going to do whatever it takes to maintain his sobriety and regain his life.

Respondent's Ex. 11, Letter from Johnnie Moss, LPC. To determine his recovery needs, Blake attended seven different sessions with a licensed drug and alcohol counselor. Blake has been assigned a mentor from Lawyers Helping Lawyers to help maintain his sobriety.[6] He attends meetings twice weekly through AA and Celebrate Recovery. Additionally, Blake has utilized daily exercise to enhance his physical and mental health. Rob Nigh and his first assistant both acknowledged the paramount need for Blake to maintain his sobriety, and each pledged to promptly report any relapse to the OBA.

¶20 We also find it compelling that both the assistant district attorney who prosecuted the criminal charge against Blake, and the judge who sentenced him, testified in favor of reinstatement. Lora Howard was the assistant district attorney who was assigned the drug trafficking case against Blake. In 2008, she accepted employment with the Tulsa County Public Defender and has worked directly with Blake since 2010. During the PRT hearing, Ms. Howard noted "I will tell you that I was horrifically offended by [Blake's criminal acts] . . . [h]ow can [Blake] bring this kind of disgrace on this profession that I've worked so hard to get to, so I was very personally offended by it." Tr. PRT Hearing, at 38-39. When asked about Blake's reinstatement to the OBA, Ms. Howard opined, "Beyond any doubt, he possesses the moral character to be reinstated, in my opinion." Tr. PRT Hearing, at 50. Former District Judge William Kellough was responsible for imposing Blake's six-year sentence for the trafficking conviction. After being released from prison, Blake crossed paths with Kellough at the local YMCA. After the two men developed a friendship, Blake was invited to appear as a guest speaker at Kellough's church to discuss his drug addiction, incarceration, and rehabilitation efforts. Kellough testified during the PRT hearing that he fully supports Blake's reinstatement, "I came [to the PRT hearing] because I believe in [Blake] and I believe that he needs a second chance to be a practicing lawyer." Tr. PRT Hearing, at 19.

¶21 We believe Blake has satisfied his burden of establishing his conduct will conform to the high standards required of a member of the Bar. Blake has presented clear and convincing evidence demonstrating (1) his present moral fitness; (2) an understanding and consciousness of the wrongful nature of his unlawful conduct and the disrepute it brought upon the legal profession; (3) his present sobriety and an ability to abstain from drug or alcohol use; and (4) good conduct subsequent to his resignation.

Blake's present competence to practice law

¶22 We next address (1) whether Blake "possesses the competency and learning in the law required for admission to practice law in the State of Oklahoma;" and (2) whether Blake has overcome the presumption that he should be "required to take and successfully pass the regular examination" based on his absence from the OBA for nearly eight years. RGDP Rule 11.5(c). As noted, the PRT did not issue any findings as instructed by Rule 11.5(c). However, the evidence demonstrates Blake possesses the necessary competence for re-admission. For the past five years, Blake has been employed with the Tulsa County Public Defender. Blake's responsibilities have required him to maintain a proficiency in the law and kept him immersed in the day-to-day functioning of criminal proceedings. Public Defender Rob Nigh testified that Blake is a "tremendous asset" to his office, and he added that Blake is both knowledgeable of the law and competent. Finally, Blake completed 46.5 hours of MCLE in calendar years 2014 and 2015, and completed credits sufficient to satisfy his 2005 MCLE.[7]

 

Conclusion

 

¶23 We find Petitioner Glenn Blake has established by clear and convincing evidence that his conduct will conform to the high standards required of a member of the Bar. We find that Blake is competent to resume the practice of law, subject to compliance with the two-year probationary conditions outlined by the OBA. Respondent is ordered to pay the costs of this proceeding in the amount of $22.40 within thirty (30) days after the effective date of this opinion.

PETITION FOR REINSTATEMENT GRANTED; COSTS IMPOSED

¶24 Reif, C.J., Kauger, Watt Winchester Edmondson, Colbert and Gurich (by separate writing), JJ., concur;

¶25 Combs, V.C.J. and Taylor, J., dissent;

Taylor, J., with whom Combs, V.C.J., joins, dissenting

"I respectfully dissent to the reinstatement of the Respondent. This Respondent has a felony conviction for a very serious crime. The Respondent does not meet, by clear and convincing evidence, the very strict test set out in Rule 11.4 RGDP which requires that "An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time" (emphasis added).How does an applicant with Respondent's record have, by clear and convincing evidence, stronger qualifications than one seeking admission for the first time? Which new applicant has weaker qualifications than this Respondent? Would this Respondent, with his felony record, be admitted to the bar if he were a first time applicant? Respondent has not, by clear and convincing evidence, shown himself to have stronger proof of qualifications than a first time applicant. This Court has an obligation to safeguard the interests of the public and to protect the integrity of the Courts and the legal profession. If Rule 11.4 RGDP is to have any meaning or credibility at all, this Respondent's application for reinstatement should be denied. His qualifications are not stronger than one seeking admission for the first time."

FOOTNOTES

[1] State of Oklahoma v. Glennon J. Blake, Tulsa County Case No. CF-2007-3501.

[2] Blake had already been suspended by orders entered on September 17, 2007, for neglecting to comply with MCLE requirements and failing to pay OBA dues. See In the Matter of the Striking of Names of Members of the Oklahoma Bar Association, 2007 OK 71; and In the Matter of the Striking of Names of Members of the Oklahoma Bar Association, 2007 OK 72.

[3] Blake began working as a part-time employee. He was offered and accepted a full-time job with the Tulsa County Public Defender in 2013.

[4] In recent reinstatement cases, the PRT has neglected to specifically address RGDP Rule 11.5(c). See e.g., In re Reinstatement of Morgan, 2014 OK 110, ¶ 17, 340 P.3d 1, 5; In re Reinstatement of Herkert, 2012 OK 74, ¶ 1, n. 1. Rule 11.5(c) requires the PRT to issue a specific finding as to "[w]hether or not the applicant possesses the competency and learning in the law required for admission to practice law." Rule 11.5(c) additionally creates a presumption that any applicant who has been suspended or disbarred for more than five (5) years should be required to take the bar examination before re-admission. While this presumption may be overcome, if the "evidence is insufficient to establish the applicant's competency and learning in the law, the applicant must "take and pass the regular bar examination before a finding as to his qualifications shall be made in his favor." Id.

[5] In the 1993 OBA matter, we found Mr. Johnston had failed "to diligently and competently represent and communicate appropriately with his clients, made a false statement to the court and commingled and converted his clients' funds." In re Reinstatement of Johnston, ¶ 11, 162 P.3d at 924-925.

[6] Lawyers Helping Lawyers is a program "designed to (a) assist, through direct contact, lawyers impaired by substance abuse, depression, stress and other practice-related malaise and (b) assure the public of competent legal representation." State of Okla. ex rel. Okla. Bar Ass'n v. Giger, 2001 OK 96, ¶ 4, n.12, 37 P.3d 856, 860.

[7] See footnote 2.

GURICH, J., concurring in reinstatement: 

¶1 I join in the Court's decision to reinstate Glen Blake, but write separately to address my concern over the absence of restrictions on disbarred or suspended lawyers who remain employed in the legal profession. Blake's work for the Tulsa County Public Defender's office came remarkably close to engaging in the unauthorized practice of law. I believe it is necessary to adopt more definitive boundaries and bright-line constraints regulating employment of disbarred and suspended lawyers.

Unauthorized Practice of Law

¶2 Rule 5.5(b), Rules of Professional Conduct, 5 O.S.2011, ch. 1, app. 1-A, forbids an unlicensed individual from practicing law in this State.[1] Likewise, ORPC Rule 5.3 places accountability on persons who hire a disbarred or suspended lawyer, and is designed to ensure to prevent unauthorized practice.[2] While we have defined the practice of law as "the rendition of services requiring the knowledge and the application of legal principles and technique to serve the interests of another with his consent," this statement provides minimal guidance to the legal profession.[3]

¶3 Our opinions have addressed and imposed discipline for acts which were unmistakably engaging in the unauthorized practice of law. See State ex rel. Okla. Bar Ass'n v. Wolfe, 1997 OK 47, ¶ 15, 683 P.2d 979, 993 (holding that suspended attorney engaged in the unauthorized practice of law by offering legal advice to clients and drafting/filing pleadings in federal court); State ex rel. Okla. Bar Ass'n v. Holden, 1996 OK 88, ¶¶ 3 & 11, 925 P.2d 32, 34-35, 38 (finding suspended lawyer who agreed to represent clients, accepted fees for legal work and gave legal advice was engaged in unauthorized practice of law); State ex rel. Okla. Bar Ass'n v. Samara, 1984 OK 32, ¶ 4, 683 P.2d 979 (concluding suspended lawyer violated prohibition on unauthorized practice of law by submitting correspondence identifying him as attorney-at-law, maintaining office door with words law office, negotiating insurance settlements, and appearing in court on behalf of a client). Additionally, we have disciplined an attorney for allowing a non-lawyer employee to "engage in the unauthorized practice of law by performing legal services in the form of legal research, the alleged preparation of a motion for postconviction relief and of a petition for writ of certiorari to the United States Supreme Court without proper supervision by a licensed lawyer." State of Okla. ex rel. Okla. Bar Ass'n v. Martin, 2010 OK 66, ¶ 13, 240 P.3d 690, 698. Yet, we have not offered clear direction to suspended/disbarred lawyers or the firms and attorneys who employ those individuals as legal assistants.

 

¶4 None of our decisions have applied ORPC Rules 5.3 or 5.5 to impose detailed limitations on disbarred or suspended attorneys who continue employment in the legal profession.[4] Similarly, our Court has not promulgated any rule regulating the hiring of disbarred or suspended lawyers. In 2002, the OBA Legal Ethics Committee issued Ethics Opinion No. 319. This opinion examined ORPC Rule 5.5(b) in the context of assignments delegated to a disbarred/suspended lawyer working as a legal assistant.[5] Recognizing the potential ethical dilemma associated with employing a suspended or disbarred attorney, the OBA recommended certain restrictions on what work could be performed:

Accordingly, even though a licensed attorney in a supervisory capacity may delegate some law-related clerical tasks to non-lawyers, she must not delegate the professional function of an attorney which requires training, knowledge and experience critical to effective representation of the client's interest. Thus, proper delegation and supervision does not include counseling clients about legal matters, appearing in court, or appearing in formal proceedings that are a part of the juridical process such as questioning witnesses in a deposition.

The ethics opinion further recommended limiting assignments to tasks such as researching case law, examining court records, finding and interviewing witnesses, or delivering documents.

¶5 Although Blake denied engaging in the unauthorized practice of law, the evidence before this Court is less conclusive. First, Blake met directly with clients, without the presence of a licensed attorney. A disbarred or suspended lawyer who meets independently and unsupervised with clients is a precarious situation. Such an environment is likely to initiate the dissemination of professional advice. It is also likely to cause client confusion about the individual's professional status.

¶6 The record also indicates Blake was present in court on a daily basis. The record is not clear whether his attendance was for clerical purposes, or whether he actually had dialogue with clients, assistant district attorneys, and judges. Letters submitted by some of the judges familiar with Blake's work, demonstrate how blurred the lines were in this case. One judge noted, "[Blake] has handled numerous cases for [the Public Defender's] office and I have witnessed countless times how well he performs his duties."[6] She went on to explain, "[h]is demeanor is always pleasant to the Court as well as to the clients' that he helps represent."[7] Another judge added further confusion in her letter of recommendation:

Mr. Blake's paperwork is promptly and properly prepared, making all the difference in a docket conducted efficiently and well. Mr. Blake works hard to prepare for his docket and as well works hard during the docket to allow efficient handling of the pleas and waivers of the Public Defender's clients, most of whom are in custody. He is straightforward and accurate when I ask him questions. He is diligent and responsive to needs for information.[8]

While both letters are intended to be highly complementary of Blake, each casts doubt on whether Blake was merely a clerical employee or an unlicensed individual performing a lawyer's tasks. A letter from a third judge was the most troublesome:

Mr. Blake's performance is marked by always being punctual, well prepare[d] and well informed reference [sic] the client's cases, to the extent that I rely more heavily on his input at the preliminary hearing level more so tha[n] the licensed attorneys. His frankness, ability to communicate to all the parties involved, to include the court, and his attention to detail surpasses a majority of the parties that have routinely appear[ed] before me over the course of the last 11 years. From my observations and dealings, it is clear that Mr. Blake's dedication to those he assists in representing and lengths to which he prepares and presents the issues before the court is clearly up to the high ethical standards of the Bar.[9]

¶7 Because we have not adopted any comprehensive standards to address employment of the disbarred or suspended lawyer, it is helpful to analyze cases and rules from other jurisdictions. Some states expressly prohibit employment of disbarred or suspended lawyers in the legal profession.[10] Conversely, other states allow suspended or disbarred lawyers to work as a paralegal or law clerk, but generally place constraints on this employment arrangement. The court opinions and rules from these states supply an excellent framework from which we could develop appropriate boundaries.

¶9 For example, in Matter of Wilkinson, 834 P.2d 1356, 1362 (Kan. 1992), the Kansas Supreme Court held employment of a suspended attorney as a law clerk was not a violation of the rules prohibiting the unlicensed practice of law, so long as limitations were in place. In particular, the Wilkinson Court emphasized the importance of preventing contact between the suspended lawyer and clients:

The consensus is that an attorney suspended from the practice of law may obtain employment as a law clerk, providing there are certain limitations upon the suspended attorney's activities. Regarding limitations, we are persuaded the better rule is that an attorney who has been disbarred or suspended from the practice of law is permitted to work as a law clerk, investigator, paralegal, or in any capacity as a lay person for a licensed attorney-employer if the suspended lawyer's functions are limited exclusively to work of a preparatory nature under the supervision of a licensed attorney-employer and does not involve client contact. Any contact with a client is prohibited. Although not an inclusive list, the following restrictions apply: a suspended or disbarred lawyer may not be present during conferences with clients, talk to clients either directly or on the telephone, sign correspondence to them, or contact them either directly or indirectly.

Id. (emphasis added). The Wilkinson Court also forbade a disbarred or suspended lawyer from being present in any courtroom or legal proceeding involving client matters. Id. Subsequent to Wilkinson, the Kansas Supreme Court further added that "[a] suspended attorney cannot function independently as a law clerk or paralegal; he or she must work for and be supervised by a licensed attorney who is ultimately responsible for the paralegal work." In re Miller, 238 P.3d 227, 237 (Kan. 2010).

¶10 Interviewing witnesses or potential witness has also been considered improper. Matter of Frabizzio, 508 A.2d 468, 469 (Del. 1986); See also The Florida Bar v. Thomson, 310 So.2d 300, 303 (Fla. 1975) (Overton, J. dissenting).[11] The drafting and execution of legal documents, such as a will or deed, has been deemed the unauthorized practice of law. State ex rel. Nebraska State Bar Ass'n v. Butterfield, 111 N.W.2d 543, 546 (Neb. 1961) (drafting of will, power of attorney, deeds, mortgages, etc., involve the exercise of legal skill and training and constitute practicing law).[12]

¶11 The State of Colorado adopted a modified version of Rule 5.5, ABA Model Rules of Professional Conduct. Colorado's version of the rule reads, in relevant part:

 

(b) A lawyer shall not employ, associate professionally with, allow or aid a person the lawyer knows or reasonably should know is a disbarred, suspended, or on disability inactive status to perform the following on behalf of the lawyer's client:

(1) render legal consultation or advice to the client;

(2) appear on behalf of a client in any hearing or proceeding or before any judicial officer, arbitrator, mediator, court, public agency, referee, magistrate, commissioner, or hearing officer;

(3) appear on behalf of a client at a deposition or other discovery matter;

(4) negotiate or transact any matter for or on behalf of the client with third parties;

(5) otherwise engage in activities that constitute the practice of law; or

(6) receive, disburse or otherwise handle client funds.

Colo. RPC 5.5(B) (emphasis added); See also, 52 M.S.A., Rules of Prof.Conduct, Rule 5.8.

¶12 Florida has adopted Rule 3-6.1 of the Rules Regulating The Florida Bar, which allows "persons or entities providing legal services [to] employ suspended lawyers and former lawyers who have been disbarred . . . to perform those services that may ethically be performed by nonlawyers employed by authorized business entities." In addition, R. Regulating Fla. Bar 3-6.1(c) requires employers to notify The Florida Bar of the employment arrangement, together with "detailed description of the intended services to be provided." Florida expressly prohibits a suspended or disbarred lawyer from direct client contact; and receipt, disbursement, or handling of client trust funds or property. R. Regulating Fla. Bar 3-6.1(d).

Conclusion

¶13 A suspended or disbarred lawyer, hired to work as a legal assistant, law clerk or paralegal, stands perilously close to the proverbial cliff's edge--the unauthorized practice of law. See e.g., In re Reinstatement of Anderson, 2002 OK 64, ¶ 10, 51 P.3d 581, 583 (noting attorney's reluctance to work as a paralegal because employment in that capacity would give too much opportunity "to cross the line.").[13] The Oklahoma Supreme Court has the responsibility to regulate the practice of law to ensure protection of the public welfare. In re Reinstatement of Otis, 2007 OK 82, ¶ 9, 175 P.3d 357, 361 quoting In re Reinstatement of Smith, 1994 OK 19, ¶ 6, 871 P.2d 426, 428. To fulfill this duty, I would adopt specific conditions applicable to employment of disbarred or suspended attorneys in the legal field.[14]

¶13 My discussion is not directed at paralegals, secretaries, legal assistants, or law clerks, who have never been licensed to practice law. I also want to emphasize that a disbarred or suspended lawyer is not in the same status as a licensed legal intern, nor do the Rules of the Supreme Court on Licensed Legal Internship apply to a disbarred or suspended lawyer.[15] An attorney who has been suspended or disbarred stands in shoes vastly different from the aforementioned employees--his or her employment in the legal field should be subject to even closer scrutiny. I believe creating specific guidelines will better protect the public, the OBA, members of the Bar, and the disciplined attorney who wishes to seek reinstatement at a later date.

FOOTNOTES

[1] ORPC Rule 5.5(b) provides in relevant part:

* * *

A lawyer who is not admitted to practice in this jurisdiction shall not:

(1) except as authorized by these Rules or other law, establish an office or other systematic and continuous presence in this jurisdiction for the practice of law; or

(2) hold out to the public or otherwise represent that the lawyer is admitted to practice law in this jurisdiction.

[2] ORPC Rule 5.3 reads as follows:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

[3] R.J. Edwards, Inc. v. Hert, 1972 OK 151, ¶ 20, 504 P.2d 407, 416.

[4] As discussed previously, our decisions in Wright and Johnston both weighed reinstatement of attorneys who had been working as paralegals. Yet, neither opinion considered such employment in light of the prohibition against the unauthorized practice of law. See also In re Reinstatement of Morgan, ¶ 13, 340 P.3d 1, 4 (noting lawyer who had resigned pending discipline was working for law firm performing "legal research and general paralegal duties.")

[5] See OBA Legal Ethics Comm., Ethics Opinion No. 319 (2002). http://ethics.okbar.org/EthicsCounsel/EthicsOpinions/Opinion319.aspx.

[6] PRT Hearing, Respondent's Ex. 26.

[7] Id.

[8] PRT Hearing, Respondent's Ex. 27.

[9] PRT Hearing, Respondent's Ex. 28.

[10] See In re Kuta, 427 N.E.2d 136, 140 (Ill. 1981):

Without a doubt, a disbarred or suspended attorney should not serve as a law clerk or a paralegal during his disbarment or suspension. The line of demarcation between the work that a paralegal or a law clerk may do and those functions that can only be performed by an attorney is not always clear and distinct. The opportunity for a disbarred or suspended attorney who is serving as a paralegal or a law clerk to violate that line of demarcation is too great and too inviting.

See also, Tenn. Sup. Ct. R. 5.5(h) ("A lawyer or law firm shall not employ or continue the employment of a disbarred or suspended lawyer as an attorney, legal consultant, law clerk, paralegal or in any other position of a quasi-legal nature."); Rule 26, Ala. R. Disc. P. (allowing a suspended lawyer to seek permission to be employed in the legal profession, but prohibiting employment of a disbarred attorney); Rule 34(a), South Carolina Rules for Lawyer Disciplinary Enforcement ("A lawyer who is disbarred, suspended or transferred to incapacity inactive status shall not be employed. . . as a paralegal, investigator or in any other capacity connected with the law.").

[11] Justice Overton explained his disapproval of permitting disbarred attorneys to work without restrictions in the legal industry: I dissent. The practical effect of allowing unrestricted law office employment of suspended or disbarred lawyers clearly reduces the effect of any order of suspension or disbarment and is another step to effectively dilute the punishment.

To the layman, the difference between mere clerking and the unrestrained practice of law is not readily apparent. He observes an attorney, supposedly under suspension for unethical conduct, walking into law offices; necessarily he must wonder whether the attorney is indeed being disciplined. This confusion is compounded when the disciplined attorney is interviewing witnesses as an investigator on behalf of the law firm or otherwise discussing cases with clients. The resulting detriment to the integrity and reputation of the Bar is obvious. . .

Id. (footnote omitted).

[12] See also In re Boyer, 988 P.2d 625, 626-627 (Colo. 1999) (suspended lawyer engaged in the unauthorized practice by evaluating clients' personal injury claims, negotiating with insurer regarding claims, and collecting fees from the settlement amount); In re Creasy, 12 P.3d 214, (Ariz. 2000) (finding disbarred lawyer in contempt for participating as a private adjuster for a client during arbitration proceedings); In re Chavez, 1 P.3d 417, 424 (N.M. 2000) (holding suspended lawyer engaged in practice of law by drafting pleadings for clients, despite fact that "he did not sign the pleadings he drafted for his clients, or that he had not entered an appearance in any court.").

[13] See also Application of Christianson, 215 N.W.2d 920, 925 (N.D. 1974)("[t]he public knows that [a disbarred lawyer] has a legal education, that he has engaged in the practice of law, and that his work and his opinions are presumably more valuable on that account. We cannot accept the argument that a disbarred or suspended lawyer may engage in all activities which nonlawyers also perform."); In re Anonymous, 787 N.E.2d 883 (Ind. 2003) (explaining that an attorney who has been suspended or disbarred is "prohibited from maintaining a presence or occupying an office where the practice of law is conducted so the public is not misled into believing that the attorney is still authorized to practice law.").

[14] I would adopt the following conditions, to govern employment of a disbarred or suspended lawyer as a paralegal, clerk, legal assistant, or any other position of a quasi-legal nature:

1. All work must be directly supervised by an OBA licensed attorney;

2. The supervising attorney must work in the same office or facility as the employee;

3. The supervising lawyer shall provide a report to the OBA annually, outlining the work being performed by the employee and attesting to compliance with ORPC Rules 5.3 and 5.5.

4. A disbarred or suspended lawyer shall not: (a) work with a former partner, associate, law firm, agency or other entity, with whom the lawyer was employed/affiliated with at the time of the misconduct or discipline; or (b) work on any legal matter involving the disbarred or suspended lawyer's former clients or adversarial clients;

5. A disbarred or suspended lawyer shall not have direct dealings with clients;

6. A disbarred or suspended lawyer may perform legal research and writing if done so while: (a) employed by an attorney, law firm, or other public/private entity; and (b) the work is thoroughly supervised by a licensed attorney with the same employer;

7. A disbarred or suspended lawyer shall be prohibited from interviewing, deposing, or questioning any witness;

8. A disbarred or suspended lawyer shall be prohibited from negotiating insurance claim settlements, including but not limited to, as a private insurance adjuster;

9. A disbarred or suspended lawyer shall not participate in any trial, hearing, mediation, arbitration or other legal proceedings; and

10. A disbarred or suspended lawyer shall not receive, disburse or otherwise handle client funds.

[15] 5 O.S.2011, ch. 1, app. 6.

 

 

 

 

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1994 OK 19, 871 P.2d 426, Reinstatement of Smith, Matter of
Discussed
 1997 OK 47, 937 P.2d 988, 68 OBJ 1364, State ex rel. Oklahoma Bar Association v. Wolfe
Cited
 2001 OK 96, 37 P.3d 856, 72 OBJ 3401, STATE ex. rel. OKLAHOMA BAR ASSOCIATION v. GIGER
Discussed
 2002 OK 64, 51 P.3d 581, IN THE MATTER OF REINSTATEMENT OF ANDERSON
Discussed
 1972 OK 151, 504 P.2d 407, R.J. EDWARDS, INC. v. HERT
Discussed
 1995 OK 128, 907 P.2d 1060, 66 OBJ 3717, Reinstatement of Wright, Matter of
Discussed
 2004 OK 49, 94 P.3d 80, IN THE MATTER OF THE REINSTATEMENT OF PAGE
Discussed
 2005 OK 34, 115 P.3d 836, IN THE MATTER OF REINSTATEMENT OF: SEELYE
Discussed
 1996 OK 65, 919 P.2d 422, 67 OBJ 1833, In re Pierce
Discussed
 2007 OK 46, 162 P.3d 922, IN THE MATTER OF THE REINSTATEMENT OF JOHNSTON
Discussed
 2007 OK 71, IN THE MATTER OF THE STRIKING OF NAMES OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited
 2007 OK 72, IN THE MATTER OF THE STRIKING OF NAMES OF MEMBERS OF THE OKLAHOMA BAR ASSOCIATION
Cited
 2007 OK 82, 175 P.3d 357, IN THE MATTER OF THE REINSTATEMENT OF OTIS
Discussed at Length
 1996 OK 88, 925 P.2d 32, 67 OBJ 2288, State ex rel. Oklahoma Bar Assn. v. Holden
Discussed
 2008 OK 25, 184 P.3d 535, IN THE MATTER OF THE REINSTATEMENT OF HIRD
Discussed
 2009 OK 9, 204 P.3d 58, IN THE MATTER OF REINSTATEMENT OF PACENZA
Discussed
 2009 OK 76, 225 P.3d 804, IN THE MATTER OF THE REINSTATEMENT OF MUMINA
Discussed
 2010 OK 66, 240 P.3d 690, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MARTIN
Discussed
 2012 OK 74, IN THE MATTER OF THE REINSTATEMENT OF HERKERT
Cited
 2014 OK 110, 340 P.3d 1, IN THE MATTER OF THE REINSTATEMENT OF MORGAN
Discussed at Length
 2015 OK 9, 345 P.3d 1118, IN THE MATTER OF THE REINSTATEMENT OF KERR
Discussed
 1984 OK 32, 683 P.2d 979, State ex rel. Oklahoma Bar Ass'n v. Samara
Discussed at Length
Title 63. Public Health and Safety
 Cite
Name
Level

 63 O.S. 2-415, Applicability of Act - Unlawful Acts - Violations - Penalties
Cited