OSCN Found Document:IN THE MATTER OF THE REINSTATEMENT OF MORGAN

 

 
 

 
 IN THE MATTER OF THE REINSTATEMENT OF MORGAN
2022 OK 8
Case Number: SCBD-6981
Decided: 01/24/2022
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2022 OK 8, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

Â 

Â 

In the matter of the REINSTATEMENT OF MICHAEL STEVEN MORGAN to Membership in the Oklahoma Bar Association and to the Roll of Attorneys:

MICHAEL STEVEN MORGAN, Petitioner,
v.
STATE OF OKLAHOMA ex rel. OKLAHOMA BAR ASSOCIATION, Respondent.

ORDER FOR REINSTATEMENT

On February 7, 2013, Petitioner, Michael Steven Morgan, was subjected to an immediate interim suspension in State ex rel. Oklahoma Bar Association v. Morgan, SCBD No. 5964 (Okla. filed Jan. 30, 2013), after this Court received notice that he was convicted on one count of Theft or Bribery in Programs Receiving Federal Funds in violation of 18 U.S.C. Â§ 666(a)(1)(B) in the case of United States v. Morgan, No. 5:11-cr-00108-C (W.D. Okla. filed Mar. 30, 2011).[1] The imposition of final discipline was postponed during the pendency of Petitioner's appeal of this conviction.[2] After the U.S. Court of Appeals for the Tenth Circuit affirmed his conviction, Petitioner obtained this Court's approval to resign pending disciplinary proceedings on August 2, 2016.[3] But the Court deemed his resignation effective as of February 7, 2013--meaning he would be eligible to apply for reinstatement as early as February 7, 2018.[4]

Â 

On September 25, 2020, Petitioner applied for reinstatement. As required by Rule 11.3 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2011, ch. 1, app. 1-A, a panel of the Professional Responsibility Tribunal (PRT) held a hearing on Petitioner's application on April 28, 2021.[5] In their report filed pursuant to Rule 11.5 of the RGDP on July 12, 2021, the panel found:

Â 

(a) "that the Petitioner has not been involved in the unauthorized practice of law" in light of "clear and convincing evidence" that included his personal affidavit and testimony that he had not practiced law since being suspended, the testimony of his close friends and former colleagues and current co-workers to the same effect, and the testimony of the OBA investigator that there was no evidence to the contrary;

(b) "that the Petitioner possesses the competence and learning in the law sufficient for reinstatement" in light of "clear and convincing evidence" that since 2016 he had taken nearly 150 hours of CLE, including 13.5 hours of ethics;

(c) "that the Petitioner possesses the moral character which would entitle him to be admitted to the OBA" in light of the "clear and convincing evidence" that his efforts to be reinstated are supported by a wide array of people who have known him for decades--including former Governor Brad Henry, retired Oklahoma Supreme Court Justice Joseph Watt, former Oklahoma State Senator Glenn Coffee, District Judge Phillip Corley (Payne County), retired District Judge Donald Worthington (Payne County), District Attorney Laura Thomas (Logan and Payne Counties), and his current co-workers at Cactus Drilling Company--and that he has consistently sought "to make positive contributions . . . to the general community as well as the legal community," particularly as demonstrated by the testimony of District Attorney Laura Thomas about Petitioner's help with a juvenile delinquent program being developed in Payne County; and

(d) that Petitioner has "complied with all rule-mandated requirements for reinstatement."[6]

Based on these findings, the panel unanimously recommended that Petitioner be reinstated to membership in the Oklahoma Bar Association upon payment of the fees and expenses of the investigation and hearing transcript.[7] Petitioner paid all costs associated with this matter (i.e., $84.41) three days later.[8] Nevertheless, Respondent maintains its opposition to Petitioner's application for reinstatement.

Upon de novo review of the record, we find:

(1) Petitioner has complied with the procedural requirements necessary for reinstatement;

(2) Petitioner has established by clear and convincing evidence that he has not engaged in the unauthorized practice of law since the effective date of his resignation;

(3) Petitioner has established by clear and convincing evidence that he possesses the competency and learning in the law required for reinstatement without re-examination; and

(4) Petitioner has established by clear and convincing evidence that he possesses the good moral character and fitness necessary for reinstatement to the Oklahoma Bar Association. Petitioner has made a considerable effort to rehabilitate himself and the image of the legal profession. Furthermore, this Court has already "categorically reject[ed]" the argument "that a disbarred attorney, guilty of a particularly egregious offense against the legal profession, would be forever barred as incapable of any meaningful rehabilitation. . . . 'Such a harsh, unforgiving position is foreign to our system of reasonable, merciful justice. It denies any potentiality for reform of character.'" In re Reinstatement of Cantrell, 1989 OK 165, Â¶ 6, 785 P.2d 312, 314 (quoting In re Alger Hiss, 333 N.E.2d 429, 434 (Mass. 1975)). Petitioner's conviction for accepting a bribe--although serious--should be no bar to his reinstatement. As U.S. District Judge Robin Cauthron observed at Petitioner's original sentencing, "all of the evidence [in the underlying criminal case] is as consistent with innocence as it is with guilt. There is certainly a view you could take that would indicate that Mr. Morgan knew what he was doing was wrong and that it was wrong. There is an equally persuasive view, in my opinion, that everything he did was right and not illegal."[9] She further observed, "Clearly, [Mr. Morgan] w[as] charged with a lot, [and] w[as] convicted with very little. And that conviction, as [his criminal lawyer] has pointed out today, was based on some very suspect evidence, based on the testimony of a convicted felon, resulting in a bill [i.e., SB 738] that no one has ever complained about."[10] These statements, along with Petitioner's lack of involvement in SB 738 after its introduction, serve as mitigating factors that lessen the degree of seriousness posed by the "bribery" for which Petitioner was convicted.

The petition of Michael Steven Morgan for reinstatement to the Oklahoma Bar Association is therefore GRANTED, and his membership shall be reinstated.

DONE BY ORDER OF THE SUPREME COURT IN CONFERENCE THIS 24TH DAY OF JANUARY, 2022.

/s/ Yvonne Kauger 
ACTING CHIEF JUSTICE

Kauger, Winchester, Edmondson, Combs, and Gurich, JJ., concurring.

Darby, C.J., and Rowe (by separate writing) and Kuehn, JJ., dissenting.

Kane, V.C.J., not participating.

FOOTNOTES

[1] See State ex rel. Okla. Bar Ass'n v. Morgan, 2013 OK 10 (Order of Immediate Interim Suspension Feb. 7, 2013) (published in Okla. B.J. only).

[2] See id. (Order June 17, 2013) (published in Okla. B.J. only).

[3] State ex rel. Okla. Bar Ass'n v. Morgan, 2016 OK 85, Â¶ 12, 377 P.3d 1250, 1251.

[4] Id. Â¶Â¶ 7, 12, 377 P.3d at 1250--51 (stating that Petitioner "may make no application prior to the expiration of five (5) years from the effective date as stated in this Order" and that "the resignation is deemed effective on the date of his February 7, 2013 interim suspension from the practice of law"). See generally Rule 8.2 of the RGDP, 5 O.S.2011, ch. 1, app. 1-A ("A lawyer who so resigns [pending disciplinary proceedings] shall only be permitted to apply for reinstatement after the lapse of five (5) years and under the provisions of Rule 11.").

[5] Rule 11.3 of the RGDP requires the PRT to "designate a three-member Trial Panel composed of two lawyers and one non-lawyer to hold a hearing on said application" for reinstatement. In this case, the Chief Master of the PRT appointed Linda G. Scoggins as Presiding Master, Jennifer E. Irish as Lawyer Member, and Michael Sumaruk as Non-Lawyer Member. Just prior to the hearing, it was determined that that Mr. Sumaruk would not be able to attend. Both Petitioner and Respondent agreed to a two-person panel, thereby waiving any objection thereto. See Report of the PRT 1--2, July 12, 2021.

[6] Report of the PRT 6--9.

[7] Id. at 9.

[8] Receipt of Costs 1, July 15, 2021.

[9] Pet'r's Ex. 16, Tr. of Sentencing 121:5--:18.

[10] Id. at 135:4--:9.

Â 

Â 

ROWE, J., with whom KUEHN, J. joins, dissenting:

Â¶1 Prior to assuming office, every public official in Oklahoma must take the following oath:

I, . . . , do solemnly swear (or affirm) that I will support, obey, and defend the Constitution of the United States, and the Constitution of the State of Oklahoma, and that I will not, knowingly, receive, directly or indirectly, any money or other valuable thing, for the performance or nonperformance of any act or duty pertaining to my office, other than the compensation allowed by law; I further swear (or affirm) that I will faithfully discharge my duties as . . . to the best of my ability.

Okla. Const. art. 15, Â§ 1 (emphasis added). This oath contains solemn promises which sustain our democratic government. At its foundation, the Oklahoma oath requires that elected officials not accept financial or other remuneration to influence their decision-making in office. The oath makes clear that bribery is an unconscionable offense that cannot be tolerated among elected officials.

Â¶2 Petitioner was convicted in federal court of felony bribery on January 22, 2013. His conviction not only undermined public trust in Oklahoma government in the most serious of ways but also caused acute and substantial harm to the legal profession. Bribery in politics is unfortunately nothing new, and elected officials need not have a law license to commit the offense of bribery. What distinguishes Petitioner's bribery conviction from bribery committed by a non-lawyer is that Petitioner used his law license to obfuscate his crime.

Â¶3 Our profession exists to serve the public. Most newly licensed attorneys are told at their swearing-in ceremony that "[a] license to practice law is not conferred for the benefit of the licensee, but for that of the public." State ex rel. Okla. Bar Ass'n v. Giger, 2001 OK 96, Â¶ 18, 37 P.3d 856, 863-64. Petitioner used his law license to unlawfully enrich himself at the expense of the public. At all levels, Petitioner's bribery conviction undermined the very foundation of our profession--that of public service and public trust.

Â¶4 Contrary to Petitioner's contention, this Court has no clear policy favoring reinstatement. Rather, we evaluate requests for reinstatement on a case-by-case basis. In re Reinstatement of Blake, 2016 OK 33, Â¶ 9, 371 P.3d 465, 469. An applicant seeking reinstatement "bears the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted." In re Reinstatement of Conrady, 2017 OK 29, Â¶ 4, 394 P.3d 219, 221. In fact, an applicant seeking reinstatement must present stronger proof of qualifications than one seeking admission for the first time. Rule 11.4, Rules Governing Disciplinary Proceedings ("RGDP").

Â¶5 In seeking reinstatement, an applicant must satisfy a number of prerequisites, including that he (1) possesses good moral character, (2) has not engaged in any unauthorized practice of law, and (3) possesses the competency and learning in the law required for admission. Rule 11.5, RGDP. We also consider the following factors: (1) the applicant's present moral fitness; (2) demonstrated consciousness of the conduct's wrongfulness and the disrepute it brought upon the legal profession; (3) the extent of rehabilitation; (4) the seriousness of the original misconduct; (5) conduct after resignation; (6) time elapsed since resignation; (7) the applicant's character, maturity, and experience when suspended; and (8) present legal competence. Blake, 2016 OK 33, Â¶ 9, 371 P.3d at 469.

Â¶6 Among these, the seriousness of Petitioner's misconduct weighs most heavily against reinstatement. Bribery is a conscious, well-thought-out crime. Petitioner made a calculated decision to accept a bribe under the guise of a legal fee. In addition to the intentionality, the notoriety of Petitioner's misconduct exacerbated the harm to our profession. Petitioner's deception reflected poorly on the character of the legal profession as a whole and undermined the ability of honest, hard-working, and well-intentioned members of the Bar to overcome public mistrust of lawyers when running for public office.

Â¶7 Petitioner served as the President pro tempore of the Oklahoma Senate from 2005 to 2008, making him one of the highest-ranking, most powerful, and most well-known elected officials in state government. His misconduct and criminal conviction were the focus of significant public discourse, which reflected poorly on our State and the Bar.

Â¶8 The uniqueness of Petitioner's misconduct begs the question of what potential deleterious effect his reinstatement might have on the public's perception of the Bar, which is of utmost importance to us in disciplinary matters. See State ex rel. Okla. Bar Ass'n v. Kinsey, 2009 OK 31, Â¶ 15, 212 P.3d 1186, 1192. The answer to that question seems quite clear: Reinstatement of Petitioner's law license would signal to the public that this Court takes lightly incidents of public corruption by attorneys at the highest levels of our most vital institutions.

Â¶9 We must remain ever-vigilant of the harm bribery inflicts upon a democracy--and we must take seriously our duty to ensure that the integrity of our profession endures for future generations.

Â¶10 In summary, this crime committed by Petitioner--a lawyer-legislator using his law degree--is profoundly damaging to our profession. Thus, I respectfully cannot assent to reinstatement of his law license.